CASE 100—PETITION ORDINARY—FEBRUARY 12.

# Louisville & Nashville Railroad Company v. Berry's Administratrix.

### APPEAL FROM OLDHAM CIRCUIT COURT.

1. CONTRIBUTORY NEGLIGENCE—PEREMPTORY INSTRUCTION.—Where one of a gang of bridge-builders in the employment of a railroad company was killed by being thrown from the bridge by the movement of a loose plank upon which he was standing, and to which the foreman of the gang had tied one end of a rope which was being used in raising a piece of timber from the ground, although the deceased might, by closely examining the actual situation, have discovered that to pull the rope when he did would probably cause the plank to move, yet as he had seen the foreman adjust the rope and pull it in safety while the timber was nearer the ground, it was proper to permit the jury to determine whether his failure to make the examination was negligence; and, therefore, the court did not err in refusing a peremptory instruction to find for defendant.

2. PRACTICE—RIGHT OF JURY TO TAKE MODEL TO JURY ROOM.—The trial court may, in the exercise of a sound discretion, permit the jury to take with them on retiring for deliberation things that were used as evidence on the trial, such as a diagram, map or model. And even after the jury have retired they may take such things to the jury room, provided it is done with permission of the court. But in this case a model used on the trial was taken without such permission.

3. MEASURE OF DAMAGES—USE OF EXPRESSION "&c." IN INSTRUCTION.—In an action to recover damages for the loss of life by the willful negligence of another, the single criterion by which to measure compensatory damages is the power of the deceased to earn money, inquiry as to probable duration of his life being merely incidental, and it was error in this case to instruct the jury that, "in fixing the amount of compensation, they might take into consideration the power of deceased to earn money, the probable duration of his life, etc.," as the use of the expression, "etc.," gave the jury the right of unlimited inquiry about every possible source or cause of damage to the widow and children.

4. EVIDENCE.—It was error to refuse to permit defendant to prove by one witness, that another, called by plaintiff, had been discharged from service of defendant.

HELM & BRUCE FOR APPELLANT.

1. A peremptory instruction should have been given.

Louisville & Nashville Railroad Company v. Berry's Administratrix.

When the employe knows all about the material furnished, and being fully aware of its defective and unsafe condition, voluntarily uses it, and thereby sustains an injury, he is without remedy; and if the knowledge or the ignorance of the master and that of the servant in respect of the character of the machine are equal, so that both are either without fault or in equal fault, the servant can not recover damages of the master. (Sullivan v. Louisville Bridge Co., 9 Bush, 81; Bogenschutz v. Smith, 84 Ky, 337.)

Where the evidence is equally consistent with either view—with the existence or non-existence of negligence—it is not competent to the judge to leave the matter to the jury. (Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526.)

2. The use of the expression "&c.," in the instruction as to measure of damages, was misleading. (Bardstown, &c., R. Co. v. Metcalfe, 4 Met., 210; Gray v. Central Railroad of New Jersey, 11 Hun., 75.)

It is the duty of the court to instruct the jury as to what constitutes compensation. (L., C. & L. R. Co. v. Case, 9 Bush, 736.)

3. If the plaintiff can recover for the negligence of any one, it must be for the negligence of the foreman, Stammler, and to recover on account of his negligence it must be shown that he was guilty of *gross* negligence. (L. & N. R. Co. v. Collins, 2 Duv., 119; L. & N. R. Co. v. Filbern, 6 Bush, 579.)

The court's instructions in this case entirely disregard this principle.

4. The court erred in refusing the usual instruction as to contributory negligence.

5. The instruction defining willful neglect was confusing, there being no instruction based upon willful neglect.

6. The taking of the model to the jury room was misconduct of the jury, for which a new trial should have been granted. (Aldrich v. City of Minneapolis, 52 Minn., 164; s. c. 53 N. W. Rep., 1072; Woodbury v. City of Anoka, 52 Minn., 329; s. c. 54 N. W. Rep., 187; State v. Sanders, 68 Mo., 202; s. c. 30 Am. Rep, 784; State v. Hartmann, 46 Wis., 248; s. c. 50 N. W. Rep., 193.)

7. It was error to refuse to permit defendant to prove that one of plaintiff's most important witnesses was one of its discharged employes, having been discharged for drunkenness. (Starks v. The People, 5 Denio, 106.)

And to make such testimony competent, it was not necessary that a foundation should first be laid by cross-examination of the witness whose bias was thus attempted to be shown. (Pierce v. Gilson, 9 Vt, 222; Civil Code, sec. 598.)

WM. H. HOLT AND JAMES A. SCOTT FOR APPELLEE.

1. The court properly refused a peremptory instruction, and the verdict is supported by the evidence.

The cases of Sullivan v. Louisville Bridge Co., 9 Bush, 81, and Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526, distinguished.

2. Defendant was not prejudiced by the taking of the model to the jury room.

3. The additional grounds for new trial came too late.  (6 Ky. Law Rep., 450.)

4. Misconduct of jury first made to appear on motion for new trial is not a matter for review on appeal.  (3 Ky. Law Rep., 374; 6 Ky. Law Rep., 523.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This action was brought by appellee to recover for destruction of the life of her husband, C. C. Berry, by alleged willful negligence of the foreman of a gang of bridge builders, he being one of them, in service of appellant, which occurred under these circumstances : It became necessary to replace, upon a trestle across Beargrass creek, a stick of green timber, about twenty-eight feet long, eight inches thick and sixteen inches wide, to be used as a chord or stringer that had the day before fallen therefrom to the ground, about fifteen feet, to effect which two ropes were put around the stick, nearly its length apart, one end of each being fastened to a cross-tie on top of the trestle, and the other held by men, some of whom were standing upon the cross-ties, and others lower down upon girders that rested upon parts of the trestle, to pull up the timber.  But in order to aid them it appears the foreman got another rope, one end of which he tied to a loose plank about sixteen feet long, lying across the girders, and upon which he stood while pulling.  After the timber had been lifted as high as the girders, ends of which extended beyond the trestle posts and obstructed it, the foreman let go the rope he had been using and went to another place for the

purpose of shoving the timber beyond ends of the girders, so it could be gotton up on them.

It appears that Berry remained upon the ground to help raise the timber until it got out of his reach, when he went upon the trestle and took hold of the rope dropped by the foreman, and while pulling it, the loose plank was either pushed by pressure of the feet of himself and of others against it, or pulled off the girders by the rope to the ground, he falling at the same time, and receiving an injury from which he died in a few days.

Upon the trial a verdict and judgment were rendered in favor of plaintiff in the action for ten thousand dollars, and we are now required on this appeal to consider the various errors complained of.

1. There is not, in our opinion, such failure of proof to sustain allegations of the petition as requires reversal because the lower court refused to give a peremptory instruction to the jury to find for defendant. None of the witnesses appear to have been looking at Berry when he fell, all being engaged pulling the ropes except the foreman, who was pushing or prizing the timber from under the girders. But it seems to us very evident his injury was connected with and resulted from falling off the plank; for the foreman and another hand lost footing at the same time and from the same cause, and saved themselves from falling to the ground by seizing some of the trestle timbers. The rope might, thus tied to the loose plank, have been pulled in comparative safety while the stick of timber was nearer the ground as was done by the foreman; but it was, when Berry took hold of the

rope, so nearly on a level with the plank, as to render it dangerous to do so; and while he might, by closely examining the actual situation, have discovered that to pull the rope would probably cause the plank to move towards end of the girders, especially when the pressure of his and the feet of others was added, still, considering that he had seen the foreman adjust the rope and pull it in safety, standing at the same place, and that others, instead of warning him of danger, remained upon the plank, it was, in our opinion, proper to permit the jury to determine, under correct instructions, whether his failure to make the examination was such negligence as should defeat the action.

2. There was a model of the trestle made and exhibited on the trial for the purpose of showing the situation of Berry at the time he fell, and the process by which the timber was raised; and it is now urged, as ground for reversal, that after the jury retired one of them returned and, without permission of court, carried that model to their room.

There is no provision of the Civil Code directly applicable to the question raised. But section 321 provides: "After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of or after notice to the parties or their counsel."

Under that section, a jury after retiring has no right, without consent of court, to re-examine a witness at all.

(Luttrell v. Maysville, &c., R. Co., 18 B. M., 291.)  Nor does it seem to have been intended there should be an examination as to any new matter, the inquiry being restricted to what had been actually testified by the witness and without cross-examination.  But inspection and examination by a jury after retiring of a diagram, map, model and the like exhibited on the trial is not prohibited.  And we see no reason why, in case of disagreement or misunderstanding by the jury as to what was indicated or shown by them on the trial, they may not, with permission of court, be made, as well as a living witness, to give the correct information ; for no fact testified to is thereby falsified or perverted, nor any new matter brought to attention of the jury.  Section 248, Criminal Code, provides that, "upon retiring for deliberation the jury may take with them all papers and other things which have been received in evidence on the trial."  And such being authorized procedure on trials of criminal cases, it seems to us it would not be contrary to policy of the law nor prejudicial to rights of litigants for the court, in exercise of sound discretion, to permit the jury to take with them on retiring for deliberation things that were used as evidence on trial of a civil action.

3. By instruction No. 1 the lower court indicated the amount of damages the jury might find in the following language : "Then they should find for the plaintiff in such sum as will reasonably compensate her for the loss thus sustained, not exceeding forty thousand dollars.  And in fixing the amount of compensation, the jury may take into consideration the power of the deceased to earn money, the probable duration of his life, &c."

According to well settled doctrine the single criterion by which to measure compensatory damages in a case like this is the power of the deceased to earn money, inquiry as to probable duration of his life being merely incidental. But by that instruction the jury was not thus restricted, but given the right to consider and reckon, in arriving at the sum of damages, every possible circumstance or condition which might cause or aggravate loss, inconvenience or suffering, mental or physical, of his surviving widow and children; for the abbreviated word or phrase, "et cetera," or "and so forth," which signifies the same thing, was certainly intended by the lower court to have some force and meaning, or it would not have been used. And doubtless the jury did understand it, as they had a right, to give them the right of unlimited inquiry about every possible source or cause of damage to the widow and children; and we, therefore, think the instruction was prejudicial to the substantial rights of the defendant, and erroneous.

4. Another error complained of is, refusal of the court to permit defendant to prove by one witness that another called by plaintiff had been discharged from service of the company. Such fact is always proper for a jury to consider in determining credibility of a witness, and we see no reason why it may not be proved by a witness other than the one affected by it as well as by himself.

For the errors indicated the judgment is reversed, and case remanded for a new trial consistent with this opinion.