### CUDAHY PACKING CO. v. SKOUMAL.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1903.)

#### No. 1,843.

1 MASTER AND SERVANT—DEFECTIVE TOOLS—ASSUMPTION OF RISK BY SERVANT.
    When a defect in a tool or appliance is called to the master's attention by the servant who is working with it, and the master directs or requests the servant to continue to use it in its defective condition for the time being, promising to have it soon repaired or to supply a better, the servant, by complying with such order or request, cannot be regarded as having assumed the risk of injury therefrom, unless the danger is so great or imminent that a person of ordinary prudence would not have continued to use the defective tool, although requested or ordered to do so.

2. REVIEW ON APPEAL—MISCONDUCT OF JURY—TAKING EXHIBITS TO JURY ROOM.
    Where certain tools were introduced in evidence and repeatedly exhibited to the jury on the trial of an action for the personal injury of a servant, largely as bearing on the issue of contributory negligence raised by defendant, the fact that such tools were taken to the jury room, and were examined by the jury while considering their verdict, even contrary to the direction of the court, will not vitiate a verdict for plaintiff, when it does not appear that such action was in any way prejudicial

---

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 642, 645, 647.

to the defendant, or that plaintiff was instrumental in causing the exhibits to be so taken by the jury. Especially such verdict will not be set aside on appeal when it has been approved by the trial court.

**3. SAME—REMARKS OF COUNSEL—SUFFICIENCY OF RECORD.**

The proper method of bringing before an appellate court for review remarks made by counsel, or a line of argument deemed improper, is to call the matter to the attention of the trial court by a seasonable objection, and by taking an exception to the court's action if the objection is overruled, and incorporating the exception, together with a statement of the remarks complained of, or the line of argument pursued, in the bill of exceptions. An appellate court cannot consider such matter where it only appears in the record from motions and affidavits filed after the trial, in connection with a motion for a new trial, and incorporated in the bill of exceptions; the allowance of such bill not being equivalent to a certificate by the trial judge of the truthfulness of the statements made in the papers so filed.

In Error to the Circuit Court of the United States for the District of Nebraska.

Edson Rich and Charles E. Clapp, for plaintiff in error.

Matthew Gering, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge. This is an action for personal injuries which Anton Skoumal, the defendant in error, brought against the Cudahy Packing Company, the plaintiff in error, recovering therein a verdict against the defendant company in the sum of $5,000. The plaintiff below filed a petition which contained, among others, the following allegations, in substance: That during the latter part of the year 1899 he was employed by the defendant company to work in its blacksmith shop as a skilled blacksmith; that on January 15, 1900, while the plaintiff was in the performance of his usual duties, the defendant company negligently furnished to the plaintiff and to his helper a hammer and holding iron which were defective and unfit for use, in that the hammer was too highly tempered and brittle, and was somewhat broken and worn upon the edges thereof; that after using the defective hammer and the holding iron for some time prior to January 15, 1900, plaintiff did on that day direct his helper to report the defective condition of the hammer, and request the defendant, through the foreman of its blacksmith shop, to furnish him and his helper with a new hammer that was fit for use, or to repair the hammer which they were using so that it might be further used without danger; that on said day, when this complaint was made to the foreman of the blacksmith shop, he directed the plaintiff to continue to use the hammer for the present, until he had finished the piece of work upon which he was then engaged, assuring him at the time that no immediate danger would be incurred in using it, and promising him that, upon the completion of the job on which he and his helper were then engaged, he would obtain and furnish the plaintiff a new hammer with which to work; that, in reliance upon such assurance and promise, he continued to use the defective tool; that about an hour after such complaint was made and the promise given, and prior to the com-

pletion of the job on which the plaintiff and his helper were then engaged, and while the plaintiff was using the hammer with ordinary care and caution, a fragment from the head thereof flew off, striking the plaintiff in his left eye, and injuring it so that his sight was destroyed, and the eye had to be removed. On the trial of the case, evidence was produced by the plaintiff which tended to establish the aforesaid allegations and all other material allegations of the complaint.

On the trial in the circuit court the defendant company saved exceptions to four excerpts from the charge, on which some reliance seems to be placed for the purpose of obtaining a reversal of the judgment; but a careful consideration of the parts of the charge to which the exceptions relate has satisfied us that the exceptions are not well founded, and that the charge, considered as a whole, was substantially correct, or at least that the plaintiff in error has no just cause to complain. Inasmuch as the paragraphs of the charge which are said to be erroneous are somewhat lengthy, and consist largely of commentaries on the evidence, such as the trial judge was clearly entitled to make, it is deemed unnecessary to quote them in full. The rule of law which was enunciated in the several paragraphs in question was to the following effect: That if Skoumal, the plaintiff below, saw the defects in the hammer prior to the accident, and continued to use it in its defective condition, he thereby assumed the risk of injury, and could not recover, but that he might recover, notwithstanding he was aware of the defects in the hammer, provided the jury were satisfied by the evidence that he caused the defective condition of the hammer to be made known to the foreman in charge of the defendant's blacksmith department prior to the accident, and the foreman, after examining the hammer, acknowledged that it was in a bad condition, but directed Skoumal and his helper to go on with the job then in hand, promising them that a new hammer would then be supplied, and provided, further, that Skoumal, in reliance upon this promise, continued to use the implement, and was injured by a fragment flying therefrom before the job was completed. This statement of the law was supplemented by the further statement, in substance, that, even on the state of facts last supposed, the plaintiff would not be entitled to recover, provided Skoumal, as a sensible man, could see that, owing to the condition of the hammer, there was danger in every blow he struck, because in that event the danger of using the hammer was so imminent that he would be guilty of contributory negligence.

As before remarked, we are unable to discover any material error in these excerpts from the charge, since the law is well settled that when a defect in a tool or an instrument is called to the master's attention by his servant, and he directs or requests the servant to continue to use it in its defective condition for the time being, promising to have it soon repaired or to supply a better implement, the servant, by complying with such an order or request, cannot be regarded as having assumed the risk of getting hurt, unless the risk is so great or imminent that a person of ordinary prudence would not have continued to use the defective tool, although he was requested or ordered to do so. It would be little short of absurd to hold that a

servant voluntarily agreed to assume the risk of being injured by the use of a defective implement or appliance, and to absolve the master from liability therefor, when it appears that he complained to the master of the defect, and the master admitted that the complaint was well founded, but induced the servant to continue using the defective tool or appliance by promising to repair it within a reasonably short space of time, or to supply a better. That a servant will not be held to have assumed the risk of injury incident to working with a defective implement of any sort, under the circumstances last stated, is well settled. Hough v. Railway Co., 100 U. S. 213, 224, 225, 25 L. Ed. 612, and cases there cited; Homestake Mining Co. v. Fullerton, 16 C. C. A. 545, 549, 69 Fed. 923; Green v. Minneapolis & St. Louis Railroad Co., 31 Minn. 248, 250, 17 N. W. 378, 47 Am. Rep. 771; Wood on Master & Servant, §§ 378, 379, 380.

Misconduct of the jury in taking certain exhibits to their room at the conclusion of the trial, and misconduct on the part of counsel for the plaintiff below in his closing address to the jury, are also assigned as reasons for reversing the judgment below.

The record discloses that, when the jury retired to consider their verdict, the hammer which is said to have caused the injury to the plaintiff's eye, and an iron used in connection therewith, called a "flatter," were taken to the jury room, and were examined by the jurors while they were considering their verdict. These two implements had been exhibited to the jury repeatedly during the progress of the trial, because one defense which was interposed by the defendant company was to the following effect: That shortly prior to the accident Skoumal had tempered the flatter, and had made that tool too hard and brittle, and that the injury which he sustained was due to this fact, or, in other words, to the plaintiff's own fault. Whether he had thus tempered the flatter and made it too hard, and thereby occasioned the injury of which he complained, was one of the disputable issues of fact before the jury, and experts gave their opinion as to whether the flatter had or had not been too highly tempered. The fact that these implements were taken to the jury room was made one of the grounds of a motion for a new trial, and affidavits on the part of all the jurors were filed. All of the jurors admitted in their respective affidavits that the hammer and flatter were in the jury room and were examined by the jurors, but none of them deposed that such examination had had any influence upon their verdict, while at least ten of the jurors affirmed that such examination of the two implements as was made in the jury room did not, in their opinion, have any effect whatever upon the verdict that was ultimately rendered. In overruling the motion for a new trial, the trial judge remarked that he had no recollection of having told the jury not to take the hammer and flatter to the jury room; but as reputable parties had testified that the court did so instruct the jury, and as the statement of these parties was in no wise contradicted, and as the court had no personal recollection on the subject, it felt compelled to find as a fact that he did direct the jury not to take the hammer or the flatter to their room. Nevertheless the learned trial judge overruled the motion for a new trial, and directed a judgment to be entered on the verdict; being

satisfied, apparently, that the presence of these implements in the jury room had had no perceptible effect upon the verdict.

The jury were clearly guilty of misbehavior, if, in violation of directions given by the trial judge, the tools in question were taken to their room. But it does not follow that such misbehavior was fatal to the verdict. In our opinion, it ought not to have that effect unless it is reasonable to conclude that the defendant company was in some way put to a disadvantage or was prejudiced by the action of the jury, and did not have a fair trial of the issues involved in the case. It does not seem reasonable to conclude that either party was prejudiced by the action of the jury in taking the hammer and the flatter to their room for the purpose of making a further examination thereof. They were inanimate objects which had been introduced in evidence and frequently exhibited to the jury in the progress of the trial. The presence of the hammer and flatter in the jury room afforded the jurors an opportunity to make a closer inspection thereof than they had been able to make during the progress of the trial, and also enabled them to determine with greater accuracy whether the flatter had or had not been too highly tempered. As they could only be used for such a purpose, and were in a measure helpful to the jury in reaching a right conclusion, we can perceive no sufficient reason why they should have been excluded from the jury room, inasmuch as the object of all trials before a jury is to attain a right result as respects questions of fact. In the case of Hix v. Drury, 5 Pick. 296, 302, it was held that if a paper which has not been introduced in evidence is delivered to the jury, by design, by the party in whose favor the verdict is returned, the verdict will be set aside. In Woodbury v. City of Anoka, 52 Minn. 329, 54 N. W. 187, a request was made during the trial that the jury be taken from the courtroom to view and examine the condition of a certain sidewalk which formed the subject-matter of the controversy. Notwithstanding the refusal of the court to permit the jury to make the examination, two of the jurors did examine it with some care during a recess of the court, and such action on their part was held to be such misconduct as justified the court in setting aside the verdict. Also, in the case of Consolidated Ice Machine Co. v. Trenton Hygeian Ice Co. (C. C.) 57 Fed. 898, it appeared that, on the trial of an action to recover the price of an ice plant sold, where the defense rested largely upon the alleged poor quality of ice which the machine produced, some of the jurors, in passing out of the courthouse at recess, saw a wagon filled with ice which had been produced by the machine, and paused for a time to examine the ice, and smelled and tasted it, with a view of ascertaining if the ice was of good quality. This was held to be misconduct on the part of the jury, but inasmuch as it appeared that such misconduct was known, before the conclusion of the trial, to counsel for the complaining party, against whom a verdict was eventually rendered, and inasmuch as the fact was not brought to the attention of the court until after the verdict had been rendered, the court refused to set the verdict aside.

The foregoing cases have been cited by counsel for the plaintiff in error in support of their contention that the misconduct complained of

in the case at bar was such as necessitates a reversal of the judgment. We think, however, that they do not sustain this contention, for the reason that in the cases cited it is evident that the jurors, or some of them, at least, had acted on evidence dehors the record, that was not introduced during the course of the trial, whereas in the case in hand it appears that the jury merely took to their room certain exhibits which had been introduced in evidence, and that such further examination of the exhibits as was made by the jury, if it had any effect on the verdict, must have aided them in reaching a right conclusion. The alleged misconduct of the jurors tended to promote, rather than to defeat, the ends of justice. In such a case as the one at bar, where an exhibit in the form of a tool, a model, or other inanimate object, which has been offered in evidence or used before the jury in the progress of the trial, finds its way into the jury room, and is examined by the jurors in their retirement, we think it is the better doctrine that, even if such an exhibit is taken by the jury to their room without proper permission, it is not such misconduct on their part as should serve to overturn the verdict. Especially should this be the rule where, as in the case at hand, it does not appear that the prevailing party was instrumental in placing the exhibit in the hands of the jury, to be taken to their room. The opinion last expressed seems to be the one which is entertained, in substance, by other appellate courts both as respects verdicts in civil and in criminal cases. In Russell v. State, 92 N. W. 751, 754, the Supreme Court of Nebraska say:

"The modern practice, * * * both in civil and criminal cases, is to send to the jury room all instruments, articles, and documents, other than depositions, which have been received in evidence, and which will, in the opinion of the trial judge, aid the jury in their deliberations."

See, also, the following cases: Blazinski v. Perkins, 77 Wis. 9, 45 N. W. 947; Gresser v. State (Tex. Cr. App.) 40 S. W. 595; Hickman v. Layne, 47 Neb. 183, 66 N. W. 298; Illinois Silver Mining & Milling Co. v. Raff (N. M.) 34 Pac. 544; People v. Page, 1 Idaho, 106; Louisville & Nashville R. R. v. Berry's Adm'x, 96 Ky. 604, 29 S. W. 449.

We are further confirmed in the view that the alleged misconduct of the jury did not materially affect the result of the trial by the fact that the trial judge refused to set the verdict aside and grant a new trial when the action of the jury was called to his attention, as he should have done if he was satisfied by the showing made, or thought it probable, that the conduct complained of was in any material respect prejudicial to the defendant.

The bill of exceptions shows that during the trial the plaintiff below called as a witness one of the defendant's attorneys, and asked him if it was not a fact that he represented the Maryland Casualty Company, of Baltimore, Md., and if he had not written a certain letter to the latter company concerning the case against the defendant company, which was then on trial. An objection to these questions was interposed, which was sustained, and they were not answered. Notwithstanding this fact, it is said that in his closing argument the plaintiff's attorney, referring to the incident, said that he had called one of the defendant's attorneys to the stand and propounded the foregoing questions, which had been excluded by the court, and, if a

judgment was rendered against the defendant company, he did not know whether it would be paid by it or by the Maryland Casualty Company. It is urged that this was such misconduct on the part of counsel for the plaintiff below as entitled the defendant company to a new trial. The statement which the plaintiff's attorney is said to have made to the jury in his closing argument is only disclosed by an affidavit of one of the defendant's attorneys which was made and filed in support of a motion for a new trial about two weeks after the verdict had been rendered. The bill of exceptions proper (and by that we mean the portion of the bill which purports to give an accurate account of what transpired at the trial) does not show that the plaintiff's attorney made the remarks imputed to him, or, if he did, that any objection was made thereto at the time, or that an exception was saved. All that this court knows or can know about the incident is what appears in affidavits that were filed subsequent to the rendition of the verdict, in support of a motion for a new trial. One affidavit contained the statement that the remark in question was made and was excepted to, while a motion that was made at about the same time to strike this affidavit from the files (which motion is also contained in the bill of exceptions) contains the statement that such language as plaintiff's attorney may have used was not excepted to at the trial. Now, it is true that in making up the bill of exceptions, contrary to the usual practice, all of the proceedings in the case subsequent to the trial, including motions that were filed, and affidavits in support thereof, have been incorporated into the bill and made a part thereof; but the allowance of the bill in this form, as respects matters subsequent to the trial, amounts to no more than a statement by the trial judge that such proceedings were had; that is to say, that certain motions and supporting affidavits, as set forth in the bill, were in fact filed. The allowance of the bill in the manner described is not tantamount to a certificate by the trial judge that all of the statements contained in the motions and the affidavits are true. Indeed, it is quite certain that the trial judge did not intend to certify to the truth or falsity of any of the statements contained in the motions and supporting affidavits that were filed subsequent to the verdict, or to do more than certify that such motions and affidavits were filed, since there appears to have been a controversy as to whether an exception was taken at the trial to any remarks which plaintiff's counsel may have made, which controversy was left undetermined. The result is that we feel constrained to hold that the record fails to show, in an authentic form, that an exception was taken during the progress of the trial to the improper remarks said to have been made by the plaintiff's attorney.

The method of preserving the question so that it can be reviewed on appeal, whether counsel on the trial have been guilty of such misconduct as entitles the complaining party to a reversal of the judgment, varies somewhat in different jurisdictions. In Thompson on Trials, § 962, it is said that the confusion of views as respects this question of practice is "not very creditable to the courts." The learned author, after considering the subject at some length, concludes, however, that the correct method of bringing a question of this sort before an appellate tribunal for review is to make a seasonable objec-

tion to the improper remarks of counsel when they are made, **or** to an improper line of argument when it is adopted, thereby challenging the trial court's attention to the subject, and by taking an exception to the court's action, if the objection is overruled, and by incorporating the exception, together with a statement of the remarks complained of or the line of argument pursued, in a bill of exceptions signed and sealed by the presiding judge. The method of practice so pointed out by the learned author was approved by the Supreme Court in Crumpton v. United States, 138 U. S. 361, 364, 11 Sup. Ct. 355, 356, 34 L. Ed. 958, where that court said:

"It is the duty of the defendant's counsel at once to call the attention of the court to the objectionable remarks, and request its interposition, and in case of refusal to note an exception. Thomp. on Trials, § 962."

The same method of procedure has been adopted and approved in other jurisdictions, and it would seem to be entirely reasonable to require counsel for the complaining party to call the attention of the trial judge to remarks made by opposing counsel, or to a line of argument pursued by him which is deemed to be improper, and to invoke the interposition of the trial judge, and to save an exception to his action in the usual way, provided he refuses to condemn the action of opposing counsel, or to arrest his line of argument, or to grant other suitable relief. Bradshaw v. State, 17 Neb. 147, 151, 152, 22 N. W. 361; McLain v. State, 18 Neb. 154, 24 N. W. 720; State v. Howard, 118 Mo. 127, 146, 24 S. W. 41; State v. Taylor, 118 Mo. 153, 163, 24 S. W. 449; Rudolph v. Landwerlen, 92 Ind. 34, 37; Dowdell v. Wilcox, 64 Iowa, 721, 724, 21 N. W. 147; Learned v. Hall, 133 Mass. 417, 419; Roeder v. Studt, 12 Mo. App. 566.

It goes without saying that a trial judge has the power, and is always at liberty, of his own motion, to reprimand counsel when they make use of language or indulge in a line of argument that is improper, unfair, or that is calculated to arouse the prejudices of jurors, or divert their attention to extraneous matters, or to issues that are foreign to the case, and no trial judge should hesitate for a moment to exercise such power, although his intervention is not solicited; but, when remarks are made by counsel or arguments are advanced that are deemed to be so far improper and prejudicial to the interests of a party that his counsel resolves to assign them as grounds for reversal by an appellate tribunal, he should at least challenge the attention of the trial judge to the matter, and, if adequate relief is not afforded, should thereupon save an exception, and incorporate it in a bill of exceptions. This was not done in the present case, or at least the bill of exceptions does not show that it was done. The remark that is said to have been made by plaintiff's attorney on the trial of the case is subject to just criticism, and should not have been made. We entertain no doubt on this point, and feel free to condemn it. The trial court, in the exercise of its discretion, might have set aside the verdict and granted a new trial because of the language complained of. It did not see fit to do so, however, and its action in this respect indicates, we think, that, in the opinion of the trial judge, the remarks which were made did not prejudicially affect the

rights of the defendant company. This court is in an entirely different situation. The judgment below is presumptively right, and we cannot disturb it except for error of law committed by the trial court, on account of which an exception was duly taken and saved during the progress of the trial. The record, so far as this court is concerned, discloses no such error, and the judgment below must accordingly be affirmed.

It is so ordered.