## PENNSYLVANIA R. CO. v. FORSTALL.

(Circuit Court of Appeals, Second Circuit.　January 7, 1908.)

### No. 46.

1. **WRIT OF ERROR—DIRECTION OF VERDICT—REVIEW.**
    On review of an order declining to direct a verdict for defendant, the Circuit Court of Appeals must examine the evidence from a viewpoint most favorable to plaintiff.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4024.]

2. **MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—ASSUMED RISK— PROMISE TO REPAIR.**
    Plaintiff was employed as a brakeman in defendant's railroad yard, and required to assist in placing cars with a switch engine, to which a push pole was attached with a collar and chains, to prevent the pole from swinging too far to the side. The collar had been in a defective condition for some months prior to the accident, and plaintiff in various ways had attempted to prevent its slipping, without success, when he complained to defendant's agent, who promised that the collar should be fixed the next time the engine went to New Jersey. A few days after this promise was made plaintiff injured his hand, and was prevented from performing his regular duties, and had not worked again with such engine until just before the moment of the accident, when, as he was riding on the rear of the engine, "drilling" cars by means of the pole, it swung too far off the track, and struck a car on an adjoining track, and was forced back against plaintiff, causing his injuries. *Held,* that plaintiff was justified in remaining a reasonable time after the promised repairs, and in assuming that the repairs had been made in his absence, and that he therefore did not assume the risk, in the absence of proof that he knew that the promise to repair had not been fulfilled.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 638–640.
    Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. **SAME—INSTRUCTIONS—REFUSAL.**
    Where there was evidence of a promise to repair a defective push pole attached to an engine, by which plaintiff was injured, and there was no evidence that plaintiff knew the repairs had not been made at the time of the accident, a request to charge that if plaintiff knew the pole was out of order, and if more than a reasonable time to repair it had elapsed after plaintiff had notified defendant of the defect before the accident, and no repairs were made, he assumed the risk therefrom by remaining in the service, was properly refused, as ignoring the distinction between knowledge that the pole was defective and knowledge of the danger to be apprehended from its use, and as failing to hypothesize that plaintiff knew the repairs had not been made.

4. **SAME—PLEADING—PROMISE TO REPAIR.**
    Where a complaint charged that defendant failed in its duty as an employer and furnished unsafe appliances, and defendant, without pleading it, was permitted to offer evidence to show that plaintiff assumed the risk of

the dangerous appliance, plaintiff, without specific pleading, was properly permitted to show a promise to repair, which merely negatived the assumption of risk; plaintiff not being required to negative assumption of risk in his complaint.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 868.]

5. SAME—NEGLIGENCE.

Where plaintiff, a railroad brakeman, was injured by a defective push pole, which defendant furnished and knew was unfit for use, defendant was negligent in failing to perform its duty to furnish safe appliances, notwithstanding an extra pole not shown to have been in good condition was in the yard; it being the duty of defendant, and not plaintiff, to install such extra pole on the engine.

6. SAME—CAUSE OF ACCIDENT—CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

In an action for injuries to a brakeman, whether the accident was caused by the slipping of a collar attached to a push pole on the engine, or by the negligence of plaintiff and his fellow servants, held for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1000–1009.]

7. SAME—INSPECTION—DUTY OF MASTER.

A switch engine was operated with a heavy push pole, secured to the engine by bolts and supports, as well as by chains attached to a collar thereon. The collar was defective, and required more than a mere ordinary adjustment, and plaintiff, a brakeman on the engine, prior to his injury by reason of the defect, tried without avail to repair it, whereupon defendant's agent promised to send it away for repairs. Held, that such appliance was not one requiring constant renewal and adjustment on account of daily wear and tear, and that it was the railroad company's duty to inspect the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 235.]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Writ of error to review a judgment entered upon the verdict of a jury in favor of the defendant in error, who was the plaintiff below. In the opinion the parties are designated as in the court below.

Robinson, Biddle & Benedict (N. B. Beecher, of counsel), for plaintiff in error.

D. R. Almy, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This was an action to recover damages for personal injuries received by the plaintiff, an employé of the defendant, through its alleged negligence. The plaintiff having recovered judgment in the court below, the defendant has brought this writ of error. We may conveniently consider the questions raised in the order of the points in the defendant's brief.

The defendant's first point is that a verdict in its favor should have been directed, because the plaintiff assumed the risk. The inquiry under this point necessarily involves an examination of the facts from a viewpoint most favorable to the plaintiff. We may therefore state the following as facts which the jury were warranted in finding from the evidence.

The plaintiff was employed by the defendant in its Brooklyn yard as a brakeman, but with certain additional duties with respect to the placing of cars. At the time of the accident he was riding on the rear end of a switch engine, which was "drilling" cars. The tracks in the yard had such sharp curves that it was impossible for cars to pass around them with ordinary couplings. To obviate this difficulty the rear end of this switch engine was fitted with a push pole eight feet in length, fastened so as to project horizontally, and prevented from swinging too far to each side by chains attached to an iron collar around the pole. This collar was worn, and before the accident had sometimes slipped upon the push pole. When it slipped, it permitted the pole to swing farther to each side than was intended. It slipped immediately before the accident, and this time the pole swung so far off the track—the engine going around a curve—as to come in contact with a car upon an adjoining track. The pole was thus forced back upon the plaintiff, squeezing his leg, and causing the injuries complained of. The collar upon the push pole had been in a defective condition for some months previous to the accident. The plaintiff had tried in various ways to prevent its slipping, but without effect. About a month before the accident he complained to the defendant's agent, his superior, about the trouble, and the agent promised that the collar would be fixed the next time the engine went to New Jersey. The engine was sent to New Jersey, but nothing was done to the collar. A few days after this promise was made the plaintiff injured his hand, which prevented him from performing his regular duties. He was about the yard, but did not work on this engine until just before the moment of the accident. It did not appear that the plaintiff, when he then went upon the engine, knew that the defendant's agent had failed to keep his promise to repair the collar.

These facts fall short of showing that the plaintiff was assuming the risk at the time of the accident. Even if his knowledge of the defect amounted to knowledge of the danger, so that he once had assumed the risk, his position was changed by the defendant's promise to repair. The jury were warranted in finding that after this promise was made the plaintiff continued in his employment relying upon it, and not taking upon himself the risk. This he had a right to do. He was justified in remaining a reasonable time for the promised repairs to be made. If he knew that they were not made within such time, he took his chances if he remained longer. But such knowledge is not shown. As we have seen, it does not appear that the plaintiff, when he returned to work upon the engine immediately before the accident, knew that the defendant had failed to keep its promise to repair. There can be no inference that the plaintiff did not rely upon the performance of the promise, and assumed the risk, unless he knew that the promise had not been fulfilled.

The defendant's second point is that the trial court erred in refusing to charge, as requested, that:

"If the plaintiff knew that the pole was out of order, and if more than a reasonable time to repair it had elapsed after he notified the defendant before the accident, and no repairs were made, he assumed the risk therefrom by remaining in the service."

The request as a whole did not correctly state the law. It ignored the distinction between knowledge that the pole was out of order and knowledge of the danger to be apprehended from its use. It also failed to state that the plaintiff knew the repairs had not been made. As we have just seen, it is not so much a question of remaining after promised repairs have not in fact been made as of remaining after knowledge that they had not been made.

In its third point the defendant claims that the trial court erred in permitting the plaintiff to prove that the defendant promised to repair, in the absence of any allegation to that effect in the pleadings. The complaint charges that the defendant failed in its duty as an employer and furnished unsafe appliances. The defendant, without pleading it, was permitted to offer evidence to show that the plaintiff assumed the risk of the dangerous appliance. Whether this practice was correct we need not now determine. But certainly the plaintiff then, without specific pleading, had the right to show that the defendant promised to repair. This was in no sense a promise which the plaintiff was seeking to enforce. It merely negatived the assumption of the risk. It showed that the plaintiff in continuing to work did not intentionally take upon himself the danger, but relied upon the defendant's promise to repair. The plaintiff in his complaint was not obliged to show that he did not assume the risk. A fortiori he was not bound to show why he did not assume the risk.

The defendant's fourth point is that a verdict should have been directed in its favor because it fulfilled its entire duty as master. The duty of the defendant was to use reasonable care to furnish the plaintiff safe appliances with which to work. The jury were warranted in finding from the evidence that the push pole furnished by the defendant was unfit for use and that the defendant knew of it. The fact that an extra push pole was at the yard did not meet the defendant's obligations. It was its duty, and not the plaintiff's, to install it upon the engine. Moreover, it does not clearly appear that the spare pole itself was in good condition.

The fifth point urged by the defendant is that the court erred in submitting to the jury the question whether the accident was caused by the slipping of the collar upon the push pole. There was, however, testimony that the collar slipped just before the accident and allowed the pole to swing. With this evidence in the case, the question whether such slipping caused the injury was most properly submitted to the jury.

The defendant's sixth point is that the verdict should have been directed in its favor because the true explanation of the accident was the gross negligence of the plaintiff and his fellow servants. The true explanation of the accident was for the jury to find. We cannot say from the testimony that they were bound to find contributory negligence or the negligence of co-employés. It is true that the plaintiff directed the placing of the car which the pole struck on No. 3 track. But it does not appear that he designated its precise location, nor that its location was dangerous, had the pole not swung. So it does not appear that the plaintiff, when riding upon the engine, could in any

way have prevented the heavy pole from swinging when the collar slipped.

In its seventh point the defendant claims that the court erred in refusing to charge that there was no duty upon the defendant to inspect the push pole. As a general rule it is the duty of a master to properly inspect the appliances used by his servants for the purpose of discovering defects. An exception to this rule exists in the case of appliances, not of a permanent nature, which require constant renewal and adjustment on account of daily wear and tear. There the master does his duty when he furnishes a supply of these appliances and the means by which the servants may adjust and repair them. But this was not a case of a simple appliance not of a permanent nature. The push pole was a heavy appliance of wood and iron, secured to the engine by bolts and supports, as well as by chains attached to the collar; and the slipping collar required more than a mere ordinary adjustment, which the plaintiff or his fellow servants were bound to make. In fact, the plaintiff tried without avail to fix it, and the defendant's agent promised to send it away for repairs. The trial court correctly refused to charge that the defendant owed no duty of inspection.

There is no error, and the judgment of the Circuit Court is affirmed.