## MISSOURI, K. & T. RY. CO. v. HIGHFILL.

No. 19310. Opinion Filed Sept. 8, 1930.

Rehearing Denied Nov. 25, 1930.

M. D. Green, John E. M. Taylor, and Eric Haase, for plaintiff in error.

S. P. Jones, Franklin Jones, Glen Alcorn, and Raymond Buck, for defendant in error.

TEEHEE, C. In this cause the parties occupied the relation of master and servant. The servant, R. T. Highfill, defendant in error and plaintiff below, recovered a judgment against the master, the Missouri, Kansas & Texas Railway Company, plaintiff in error and defendant below, in a personal injury action brought and tried on the theory that the federal doctrine of the common law of master and servant controlled the merits of the case for that the defendant was engaged in interstate commerce at the time of plaintiff's injury.

Upon defendant's motion to make his petition more definite and certain in particular details, plaintiff filed an amended petition of which the principal charging allegation read, to wit:

"The plaintiff shows that, on and prior to the 18th day of August, 1924, he was in the employ of said defendant railway company as a switchman in the yards of said company at Muskogee, Okla., and on or about said date, was engaged with a regular switching crew in the work of making up and breaking up trains in the usual way in which such operations were handled; that the said work was being done by regular switching crew, of which the plaintiff was a member commonly known as a switchman; that the said railway yard of said defendant at Muskogee, Okla., was so situated and so constructed that it was necessary for the switchmen in said yard to use what is commonly known as 'brake clubs,' or sticks, with which the brakes were set and released in the operations in said yard; and the said

defendant furnished the said brake clubs or sticks which the switchmen were required to use in the discharge of their duties in said yard.

"The plaintiff shows that, on or about the 18th day of August, 1924, at about six or seven o'clock p. m., while the plaintiff was in the active discharge of his duties as a switchman, that it became proper and necessary for the plaintiff to set and release brakes on a certain car, and to test and otherwise hande the same; and that it was proper and necessary for him to use the said brake club or stick furnished by the said defendant railway company for such use and purpose; and that it was proper and became necessary for him to place the said brake club or stick in the brake wheel and to apply much force thereto for the purpose of ascertaining that the said brake wheel could be turned sufficiently to disengage the dog from the ratchet on the brake staff. And that while the said plaintiff was so using the said brake club or stick in one of the brake wheels on one of the cars on which he was discharging his duties, and for the purpose of releasing the said brake and of ascertaining that the same could be released, that by reason of the said brake club or brake stick being worn, defective, and unsafe, unfit for use and dangerous, that when the plaintiff applied force to it, the same broke, thereby causing said plaintiff to fall, be thrown, and jerked and twisted with great violence around, about and against the said brake wheel and against the said car, which inflicted upon him the severe and permanent injuries hereinafter more fully set forth.

"That the plaintiff shows that he was handling and manipulating the brake on the said car for the purpose of controlling its movement in the ordinary, proper and necessary discharge of his duties as a switchman. * * *

"The plaintiff shows that the said injuries were so inflicted upon him by reason of the negligence of said defendant railway company, its agents, servants, and employees, in that the said railway company, its agents, servants, and employees furnished to the plaintiff a worn, defective, and insufficient brake club, or stick, which was so badly worn and defective and so out of repair as to be unsuited for such use, and that the said defendant, its agents, servants, and employees were guilty of negligence which proximately resulted in the injury to him, in failing to furnish him a good and sufficient, sound, and reliable brake club or stick with which to perform and discharge the duties required of him in the said yard."

Following other appropriate allegations as to his earning capacity at the time of injury and his life expectancy, he alleged damages in the sum of $60,000 for which in said amount he prayed judgment.

Defendant, without challenge of the sufficiency of the amended petition, answered by denial of each and every material a legation thereof, and further pleaded that if plaintiff was injured in the manner as alleged, he "was himself guilty of carelessness and negligence which contributed to his said injuries," and "that said injuries were the result of the risks of his employment, which he assumed," and thereupon prayed that it be adjudged to go hence without day with its costs in the cause.

By reply plaintiff denied "each and every material allegation" of defendant's answer.

In detailing the issues to the jury at the opening of the trial, plaintiff's counsel stated, to wit:

"For a short time prior to this accident, the railroad company had failed to provide adequate brake sticks for the use of the switchmen in the yards; that the plaintiff undertook to procure one on the day he was injured for the use in the discharge of his duties, and undertook to procure a suitable and sufficient switch club, but that the few clubs that were on hand and available had become so worn as to become somewhat dangerous for the service for which they were put. That the person in charge of the work requested the plaintiff to continue the work with such brake clubs as they had against the time that they would be provided with new and adequate brake clubs, and promised that they would within a reasonable time provide reasonable adequate brake clubs."

Over defendant's objection thereto, on the ground that the points thereof, to wit, "that the plaintiff had been requested to continue the use of certain clubs and had been promised another one," were not within the issues framed by the pleadings, the statement was by the court permitted to stand for later consideration.

Proceeding with his evidence, plaintiff was permitted to testify, over defendant's objections, in affirmance of the points contained in his quoted opening statement. Upon defendant's unsuccessful motion to strike the evidence objected to and demurrer to plaintiff's evidence, and over its objections, plaintiff was given leave to file a trial amendment covering the same, to wit:

"The plaintiff alleges that on the date that he was injured, finding that the defendant had not furnished safe and suitable brake clubs with which to discharge his duties, appealed to his office yard master and requested him to furnish safe and suitable brake club, and that the said yard

master told the plaintiff that they had no brake clubs, and requested the plaintiff to continue his work and use such brake club as he could find and procure, and promised the plaintiff that if he would do so that the defendant would in a reasonable time furnish this plaintiff and other employees a more suitable and efficient and safe brake club, and the plaintiff believing said promises and relying thereon continued in his work, receiving his injury as set forth in his amended original petition. Wherefore plaintiff did not assume the risk of being injured and prays for judgment as in his amended original petition."

Defendant objected to the filing of the trial amendment for the reasons that:

"Plaintiff's petition and amended petition did not raise the issue suggested or complaint of promise and guaranties therein and the suggested amendment does not raise the issue sufficiently in law, and for the further reason that the statute of limitations has now run against said amendment, and it is now too late to amend the pleading to conform thereto."

And defendant thereupon moved for judgment in its favor for that there was "a fatal variance between the allegations of the plaintiff's petition and the proof as made by the evidence on behalf of the plaintiff." Upon denial of defendant's motion for judgment, plaintiff requested that its original answer be considered as refiled and amended in this, to wit:

"That the cause of action as alleged in the petition's last amendment did not accur within two years next preceding the filing of said last amended petition, and that therefore the statute of limitations has run against them."

Thereupon defendant introduced its evidence. There was a jury verdict and judgment thereon for plaintiff in the sum of $8,500.

Of the several assignments of error, we will first notice defendant's complaint of the action of the trial court in admitting over defendant's objections plaintiff's evidence covered by the trial amendment for that such evidence was not within the issues framed by the pleadings.

As observed from the trial amendment, this evidence detailed the facts which went to the support of plaintiff's denial of assumption of risk pleaded by defendant. Defendant contends that such evidence was inadmissible for that there were no appropriate allegations contained in plaintiff's petition showing a reliance of recovery on the grounds of defect and promise of reparation and use of the defective instrumentality at the direction of defendant pending reparation. In support of this contention, defendant cites 26 Cyc. 1308, par. B, and Schaff v. Hendrich (Tex. Civ. App.) 207 S. W. 543. The Schaff Case states the rule relied on, to wit:

"Employee, suing for injuries and seeking to avoid employer's defense of assumption of risk by employer's promise to remedy conditions, must especially plead such promise"

—or, in other words, that the defense of assumption of risk must be negatived by the plaintiff in his petition as in anticipation thereof.

Under our practice, assumption of risk is an affirmative defense, and must be pleaded by the defendant. Shunkamolah v. Delco, 131 Okla. 272, 268 Pac. 270. This is another way of saying that, in personal injury actions based on the master's negligence, a plaintiff is not required to negative the defense of assumption of risk in his petition. As was said in Pennsylvania R. Co. v. Forstall, 159 Fed. 893, 87 C. C. A. 73, "the plaintiff in his complaint was not obliged to show that he did not assume the risk. A fortiori, he was not bound to show why he did not assume the risk."

As is to be noted, plaintiff alleged in detail the nature of defendant's negligence, and that by reason thereof he suffered injury. These allegations defendant denied, and further answered that plaintiff's injuries resulted from his employment, the risks of which plaintiff assumed. This affirmative defense plaintiff, by reply, met with a denial which was sufficient to raise that issue. American Smelting & Refining Co. v. Karapa, 173 Fed. 607, 97 C. C. A. 517. See, also, Pioneer Telephone & Telegraph Co. v. Kophart, 59 Okla. 265, 159 Pac. 355. As the evidence was in avoidance of that defense, it must follow that the same was properly admitted. And we may add that, as the trial amendment was merely a detail of the facts, it was without material consequence.

We note defendant's contention that plaintiff had no right of recovery under the evidence. Hereunder defendant proceeds on the theory that the evidence, including that complained of, merely made out what is known as a simple tool case in contradiction to a complex tool case, and was thus brought within the rule of the simple tool doctrine of the common law as applied in a number of jurisdictions. This doctrine is to the effect that in the case of employment requiring the use of a simple tool or appliance,

as in the case at bar, the master's failure to furnish a nondefective appliance, the use of which results in injury to the servant, does not constitute actionable negligence where the defect is known to the servant, or it is so obvious as should have been known, and he knows and appreciates the risks incident to the use of the defective instrumentality, even though such defect has been called to the attention of the master, and there has been a promise of reparation and a direction to continue the use thereof pending reparation.

No useful purpose would be served in listening and considering the cases relied on wherein the rule has been applied, since it does not appear that the simple tool doctrine, as stated, has been recognized by the federal courts. The rule here controlling has been stated in Seaboard Air Line Railway v. Horton, 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458, to wit:

"An employee who knows of a defect arising from the employer's negligence, and appreciates the risk attributable thereto and continues in the employment without objection or promise of reparation, assumes the risk notwithstanding it arises from the employer's breach of duty.

"Where the employer promises reparation of such a defect and the employee relying on such promise continues, he does not, during such time as is reasonably required for its fulfilment, assume the risk unless at least the danger is so imminent that no ordinarily prudent man would, under the circumstances, rely upon such a promise."

While it does not appear that there was any effort to draw a distinction between a complex and a simple instrumentality, yet, from the facts as below disclosed, the case would be regarded as one dealing with a simple instrumentality.

We quote other paragraphs of the syllabus of that case which have a bearing upon the question, to wit:

"Where, as in the present case, the injury was caused by the absence of a glass protector in front of a water gauge which burst, and the employee had continued after knowledge and promise of reparation, held, that the trial court did not err in refusing to hold, as matter of law, that the danger was so imminent that no ordinarily prudent man would continue the employment in reliance on the promise and that one so continuing did assume the risk.

"Reasonable reliance by an employee on a promise of reparation and continuance in his employment for a reasonable period pending performance cannot be regarded as contributory negligence as matter of law;

the request and direction of the employer has a material bearing on the question; and so held in this case that the question was properly submitted to the jury.

"Authorities differ, and not yet decided by this court in this or prior cases, as to whether continuing the employment in presence of danger so imminent that no ordinarily prudent man would confront it, even where the employer has promised reparation, amounts to assumption of risk or contributory negligence."

In Hermanek v. Chicago & N. W. Ry. Co., 186 Fed. 142, 108 C. C. A. 254, the simple tool doctrine was urged upon the court as controlling. This the court refused to follow, holding, to wit:

"An employee does not assume the risk by continuing to work a reasonable length of time with worn and defective tools, after having notified the employer or foreman standing in the employer's place of the worn and defective condition of the tools, and obtaining a promise that new or repaired ones would be obtained and furnished, and this whether the defective tools were simple or complex."

In that case the instrumentality was a claw-bar used for the purpose of drawing railroad spikes, and could hardly be said to be other than a simple tool.

In addressing itself to the question, the court used this language:

"The law is that an employee does not assume the risk by continuing to work a reasonable length of time with worn and defective tools, after having notified the employer, or the foreman, standing in the place of the employer of the worn and defective condition of the tools, and obtaining from the employer, or foreman, standing in his place, a promise that new ones or repaired ones would be obtained and furnished. Hough v. Railway Co., supra (100 U. S. 213, 25 L. Ed. 612); Homestake Mining Co. v. Fullerton, supra (16 C. C. A. 545, 69 Fed. 923); Cudahy Packing Co. v. Skoumal, 60 C. C. A. 306, 125 Fed. 470.

"Upon the question as to whether the claw-bar, by reason of the edges of the claws being worn and dulled, would not take hold of the spike as far below the head as a sharp one would, thereby rendering it unsafe for use, the evidence was conflicting, so that it was for the jury to say whether the head of the spike broke off because of the use of the dull and worn claw-bar, and whether such condition was the proximate cause of the injury. No sound reason exists for a different rule being applied to a simple tool than to a complex one, when the defective and dangerous character has been called to the master's attention by the servant, and a promise made by the master

that the defect would be remedied or a new tool furnished. Louisville Hotel Co. v. Kaltenbrun, 26 Ky. Law Rep. 208, 80 S. W. 1163. To the same effect may be said to be Cudahy Packing Co. v. Skoumal, supra."

It is noteworthy to remark that were we without a federal guide in this connection, the rights of the parties would be determined by the same principles above laid down by the federal cases, for that heretofore has been declared to be the common-law doctrine in this jurisdiction. Chicago, R. I. & P. R. Co. v. Lillard, 62 Okla. 63, 161 Pac. 779.

Without analysis in detail, it is sufficient to say that the evidence in this case clearly tended to establish the essential allegations of plaintiff's petition, and that he did not assume the risk arising from the use of the defective appliance by reason of complaint and concomitant circumstances, and thus the case was brought within the above governing rules of which the jury were sufficiently advised, and were properly limited to the determination of the relevant and controlling questions of fact raised by the evidence.

These conclusions render it unnecessary to consider other points urged upon us by defendant as thereby such other points are either eliminated, or have become immaterial to the merits of the case.

The judgment of the district court is affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.