THAYER, Circuit Judge.
This is a suit for personal injuries. Levi W. Myers, the defendant in error, who was the plaintiff below, purchased a ticket from St. Paul to Chicago over the railroad of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the-plaintiff in error, and was received as a passenger by said company on one of its trains which left St. Paul at 8 o’clock on the morning of September 10, 1894. When the train reached a point a few miles-east of Hudson, Wis., it found the track obstructed by a freight train-that had been derailed about 4 o’clock a. m. of that day, which train was made up in part of three tank cars, two of which contained naphtha, and one refined coal oil. Several hours before the arrival of the-passenger train from St. Paul, the tank containing oil had taken fire, and it was burning fiercely, and mailing considerable noise, when the passenger train from the west arrived. One of the naphtha tanks had exploded when the wreck occurred, and the other naphtha tank and its contents had been destroyed in the wreck. On the arrival of the-passenger train from St. Paul, two openings were made in the fence on the south side of the railroad right of way, one of said openings, *362 being 258 feet west, and tbe other 256 feet east, of the burning oil car, for tbe purpose of permitting passengers to pass through the fields around the burning car, at a safe distance therefrom, to a point on the track east of the wreck, where another train was expected to start shortly for the east, carrying the passengers who had arrived from St. Paul. The train from St. Paul stopped abreast of the west opening, and the plaintiff, with other passengers, left the train where it had halted. They passed through the west gap in the fence, as they were directed to do, walked around the burning car over the route that was indicated to them, and reached the east opening in .the fence, through which they passed back onto the right of way. While they were standing somewhere in the vicinity of the east opening, awaiting the departure of the train for the east, the burning oil tank exploded, and the plaintiff was very seriously burned and disfigured. The evidence at the trial appears to have been conflicting as to where the plaintiff was standing when the explosion occurred, but .the bill of exceptions recites that the defendant company offered testimony tending to show “that no passenger or person at said west gap, ■or west thereof, or on said route between the said west gap and said ■east gap, or at, near to, or east of said east gap, was seriously injured by said explosion; that plaintiff, after he had passed around to the •.said east gap, and to said place designated as a temporary station, as .aforesaid, without the knowledge or consent of any officer or agent of the defendant, and of his own volition, left the place so designated, as .aforesaid, as a temporary station, at which the passengers should wait, and went west on the defendant’s right of way, west of said ■east gap, toward the said burning tank, more than one-half of the distance between said east gap and the said burning tank, and that while he was there standing within about-feet of said burning tank, it exploded, and he was injured, which is the injury complained of, .and that he would not have been injured materially or at all had he remained at the said east gap, or at the place designated as a temporary station as aforesaid; that no officer or agent of defendant had .actual knowledge that plaintiff was at or near the place at which he was injured as aforesaid, or that he had left the place designated as .-aforesaid as a temporary station at which the passengers should remain until after the explosion; that the train from St. Paul on which plaintiff was arrived at the point at which it stopped at the west gap at about 10 o’clock in the forenoon, and that the explosion •occurred at or about 10:45 o’clock in the forenoon of said day.”
The principal question presented by the record is whether the trial -court erred in refusing certain instructions which were asked by the -defendant company. These instructions were as follows:
“(5) If the jury find that the plaintiff left the point designated as the place for passengers to wait for the train for Chicago, and went to a point nearer -to the burning tank, for his own pleasure, or to gratify his curiosity, or to see -the burning tank, and was there injured, and that he would not have been injured had he remained at the point designated, then he is not entitled to re•cover, and the jury should find for the defendant.”
“(7) If you find that the plaintiff passed around the burning tank to a point .at or near the east gap, and that he understood, or by ordinary observation or the exercise of ordinary care would have understood, that that was the point where he was to take the train for the east, it was his duty, so far as his rela *363 tions to the defendant are concerned, to remain there until the train should -arrive.”
“(9) If it would have appeared to á man of ordinary intelligence and prudence that the point at which the passengers were to remain was at or east of the east gap, then, if the plaintiff left that point, and went to a more dangerous place, at which he was injured, he cannot recover.”
These instructions were refused, and in lieu thereof the court charged the jury, in substance, that it was for them to determine where the plaintiff was standing with respect to the east opening in the fence when the explosion occurred, whether he knew that the place where he was standing was dangerous, and whether he was guilty of contributory negligence in going where he did, or in being where he was when the oil tank exploded. The only modification of this instruction was an instruction to the effect that, if the plaintiff knew that the place where he went and where he was west of the east gap was dangerous, and that he went there voluntarily, and that no prudent man would have done as he did, then he could not recover. But the charge, considered as a whole, was so framed as to permit the jury to decide that the plaintiff was not guilty of any contributory fault, although the fact was that he voluntarily walked up the right of way to the west more than one-half the distance from the east opening in the fence to the burning tank, and was standing there when it exploded, and was injured solely in consequence of his being in such exposed situation.
We feel constrained to hold that the three refused instructions above quoted were applicable to the testimony which was produced at the trial, and that some of them, particularly the one numbered 5, should have been given, inasmuch as the court in its charge gave no equivalent direction. The plaintiff was a man 65 years old, and of more than ordinary intelligence. The evidence shows that for many years he had been a proprietor and editor of a newspaper, and that at the time of the accident, and for four years preceding, he had held the office of American consul at Victoria, in British Columbia. When the train on which he was riding reached the scene of the accident, the ignited oil car was burning fiercely, and making much noise. It was in plain view during all the time that he was standing at the gaps in the fence, or passing through the field outside of the right of way from the west side of the wreck to the east side, and the contents of the tank appear to have been well known to him. Moreover, the fact that openings had been made in the fence on the west and east sides of the burning tank, and at a considerable distance therefrom, and that passengers were directed to go through the field to the point where they were to board the east-bound train, was in itself notice to the plaintiff and other passengers that the space inside the right of way between the two gaps in the fence was either considered dangerous, or that for some reason the defendant company- desired the passengers to keep outside of that space. In view of these considerations, we do not see that any greater knowledge could be fairly imputed to the employés of the defendant company than to the plaintiff of the risks incident to approaching too near to the burning tank. But, even if the defendant company could be held chargeable with greater knowledge of the risks in question, *364 we do not see that such fact should excuse the plaintiff for voluntarily leaving the place which the defendants had appointed for taking up passengers, and going to another place, where the dangers were-greater, without invitation of any sort, and merely to gratify his own curiosity. Hor are we able to say that the fact that certain railroad, employes were at work on the railroad track between the gaps in the fence excused the plaintiff for approaching nearer to the burning tank than the openings which had been made in the fence for the-use of passengers. These employés had duties to perform in clearing the track, which rendered it necessary for them to assume greater-risks than passengers were at liberty to assume while the relation of carrier and passenger existed, inasmuch as the defendant company had clearly indicated to passengers, by making openings in the fence, what route they would be expected to take in passing by the burning, tank, what part of the right of way they should avoid, and where-they should remain until they were taken up by the train. The high degree of care which the law exacts of a carrier of passengers entitles the carrier to insist that passengers shall remain in such places as it has provided for them, and that they shall also comply with such reasonable regulations for their safety and comfort as the carrier may prescribe. If a passenger of mature age leaves the place which he knows has been provided for him, and without any occasion for so doing, or to gratify his curiosity, goes to another, where the dangers are greater, or places himself in a dangerous attitude, which he was not intended to assume, or if he disobeys any reasonable regulation made by the carrier, it should be held that he assumes whatever increased risk of injury is incurred by so doing. This doctrine has been enforced in a variety of cases, and in view of the evidence it was applicable to the case at bar. Hickey v. Railroad Co., 14 Allen, 429; Railroad Co. v. Jones, 95 U. S. 439; Todd v. Railroad Co., 3 Allen, 18, 21; Coleman v. Railroad Co., 114 N. Y. 609, 612, 21 N. E. 1064; Railroad Co. v. Rutherford, 29 Ind. 82, 85; Railroad Co. v. McClurg, 56 Pa. St. 294, 29S; Railroad Co. v. Zebe, 33 Pa. St. 318; Bricker v. Railroad Co., 132 Pa. St. 1, 18 Atl. 983; State v. Grand Trunk Ry., 58 Me. 176; De Kay v. Railway Co., 41 Minn. 178, 184, 43 N. W. 182; Railroad Co. v. Ricketts (Ky.) 27 S. W. 860; Turnpike Road v. Cason, 72 Md. 377, 20 Atl. 113; Paterson v. Railroad Co., 85 Ga. 653, 11 S. E. 872; Bon v. Assurance Co., 56 Iowa, 664, 667, 10 N. W. 225; Dun v. Railway Co., 78 Va. 645. We are of opinion, therefore, that, inasmuch as the evidence tended to show that when the plaintiff reached the east opening in the fence he turned west, and went' of his own volition for a considerable distance along the right of way towards the burning tank, and by so doing sustained injuries which he otherwise would have avoided, the court should have charged the jury that such conduct on the plaintiff’s part prevented him from recovering. If the plaintiff was guilty of the act last described,—if out of curiosity he went to a place other than that designated by the carrier,—he assumed the extra risk thereby incurred, and it should not have been left to the jury to determine whether he thought that the place where he thus went was safe, or whether other prudent persons thought so. A passenger who, of his own volition, has incurred an unnecessary *365 risk by going, without invitation or other reasonable excuse, to a place where he had no right to go, should not be allowed to excuse his conduct, and hold the carrier liable as a carrier while he is in such exposed position, on the plea that he believed the place to be safe, .and that other persons so believed.
The defendant company assigns for error that the trial court wrongfully excluded a stenographic report of the testimony of a witness by the name of Moses R. Dickey, which had been given on a former trial of the case, after the defendant company had shown that the said Dickey was a resident of the state of Ohio, and that the defend.ant had been unable to procure his attendance at the second trial. The rule appears to be established in Minnesota—where this case was tried—-that such testimony is admissible. Minneapolis Mill Co. v. Minneapolis & St. L. Ry. Co., 51 Minn. 301, 53 N. W. 639; King v. McCarthy, 51 Minn. 190, 55 N. W. 960. And the same rule, it seems, prevails in some other jurisdictions. Railway Co. v. Elkins, 39 Neb. 180, 58 N. W. 161, and cases there cited. We can see no substantial objection to the admission of such testimony when, on the first trial, the witness was fully examined and cross-examined, provided, always, that the stenographic report of his testimony is proven to the •satisfaction of the trial court to be correct, by the person by whom it was reported, and provided further that the witness is beyond the Teach of the process of the court, and his personal attendance cannot be secured. Such testimony, we think, may very properly be accorded the same weight as a deposition duly taken on notice. Because the rule in question is in force in the state where this case was tried, and seems to be a reasonable rule, we should be disposed to hold that the testimony of the witness Dickey on the first trial ought to have been admitted, were it not for the fact that the record shows that the stenographic report of his testimony as offered was incomplete. The witness, it seems, was present when the oil tank exploded, and was himself burned. He was called as a witness by the defendant company to show at what place the plaintiff, Myers, was standing when the explosion occurred; and to point out the position which Myers occupied he referred to certain photographs that were used at the first trial, which aided materially in fixing the exact place where the plaintiff was standing when he was hurt. These photographs, however, were not produced at the second trial in connection with the testimony of the witness, and because they were not produced, and the testimony offered was therefore incomplete, and in a measure unintelligible, we think that no error was committed by the trial court in excluding it.
An exception was also taken by the defendant company to the .admission of evidence showing that the salary and fees which the plaintiff received as consul at Victoria amounted, in the aggregate, to about $5,000 per annum. It appeared that his commission as consul had expired shortly before the accident occurred, and it was not shown that he had lost any part of the salary or fees of the office in consequence of his injuries. Under these circumstances we are of opinion that the testimony last referred to ought to have been excluded. The proof of his earning capacity should have been confined *366 to that business which he ordinarily followed, inasmuch as" it was not shown that his injuries had occasioned any loss of salary as a public officer.
On the argument of the case, and in the brief of counsel for the defendant in error, considerable space has been devoted to the discussion of the question whether the errors complained of by the plaintiff in error were properly saved and assigned. With reference to this subject it is sufficient to say that the exceptions which we have considered to the refusal of the defendant’s instructions, and to the rejection and admission of testimony, are, in our judgment, saved and assigned in such manner as to satisfy the requirements of our rules. For the reasons indicated, the judgment of the circuit court is reversed, and the case is remanded for a new trial.