TOLEDO TRACTION CO. v. CAMERON.

(Circuit Court of Appeals, Sixth Circuit.   April 25, 1905.)

No. 1,374.

1. JURISDICTION OF FEDERAL COURT—DIVERSITY OF CITIZENSHIP—MINOR SUING BY GUARDIAN.

Where the plaintiff is a minor suing by his guardian, the question of the jurisdiction of a federal court is determined by his own citizenship, and not that of his guardian, which is immaterial.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 858.

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. SAME—ALLEGATION OF CITIZENSHIP.

An allegation in a petition that plaintiff is a citizen "of said county of Monroe, in the said state of Michigan," while inexact as an averment of citizenship of the state of Michigan for the purpose of showing jurisdiction in a federal court, will be treated as sufficient, especially in an appellate court, when it has been so construed and treated by both court and counsel in the trial court, which made a finding of the fact in accordance therewith.

3. SAME—EFFECT OF INSUFFICIENT AVERMENT IN AMENDED PETITION.

Where the original petition in an action contains the requisite averments to give a federal court jurisdiction, such jurisdiction is not lost

because an amended petition alleges plaintiff's citizenship in the present tense only.

**4. SAME—ISSUE AS TO CITIZENSHIP—CONCLUSIVENESS OF VERDICT.**

An averment of plaintiff's citizenship in an action in a federal court, in which jurisdiction depends on diversity of citizenship, is a material allegation, within the meaning of the Ohio Code, and is put in issue, under such Code, by a general denial in the answer; and a general verdict finding the issues in favor of plaintiff, followed by judgment thereon, is conclusive on such issue as against a defendant who has participated in the trial without objecting to the jurisdiction, or asking any ruling or instruction on the ground of the insufficiency of the evidence on the issue.

**5. SAME—INQUIRY INTO JURISDICTION—PROCEDURE.**

Under Judiciary Act 1875, § 5, 18 Stat. 472 [U. S. Comp. St. 1901, p. 511], where a defendant after verdict and judgment for the first time raises the question of jurisdiction, on the ground that there was no evidence to support the jurisdictional allegations of plaintiff's pleading, which were put in issue by a general denial, it is competent for the court to set aside the judgment for the purpose, of inquiring into the question, either with or without a jury, as it may see fit; and, unless it shall appear from the evidence adduced or from the record that it is without jurisdiction, it may re-enter the judgment on the verdict.

**6. SAME—CITIZENSHIP OF INFANT—EFFECT OF DIVORCE OF PARENTS.**

Where the father and mother of. an infant plaintiff had been divorced, and he had been awarded to the custody of his mother, his domicile and place of citizenship, for the purposes of the jurisdiction of a federal court, are determined by hers, so long as he remains with her and in her care; and the fact of the divorce decree does not prevent her from acquiring citizenship in another state for herself and him.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Domicile, § 26.]

**7. PLEADING—ISSUES RAISED BY GENERAL DENIAL—OHIO CODE.**

An allegation in the petition of an infant, suing in a federal court by his guardian, that such guardian was duly appointed by a probate court, etc., is not of a jurisdictional fact, nor is it a material averment, within the meaning of the provision of the Ohio Code prescribing what issues may be raised by a general denial in the answer; and, where not specifically denied, an objection to the sufficiency of the proof of such allegation cannot be raised after verdict and judgment.

**8. FEDERAL COURTS—EVIDENCE IN ACTIONS AT LAW—STATUTORY LIMITATIONS.**

Federal courts are not required by Rev. St. § 861 [U. S. Comp. St. 1901, p. 661], providing that "the mode of proof in the trial of actions at common law shall be by oral testimony and examining of witnesses in open court, except as hereinafter provided," to exclude evidence which, although not within the terms of such section or of the following provisions relating to depositions, is still admissible under the principles of evidence recognized by the common law before, and at the time of, that enactment.

**9. SAME—TESTIMONY GIVEN ON FORMER TRIAL—GROUNDS OF ADMISSIBILITY.**

Rev. St. Ohio, § 5242a, which authorizes the admission in evidence of the testimony given by a witness on a former trial of the same case when the witness is dead or beyond the jurisdiction of the court, is in conformity with the rule recognized at common law, which permits the use of such evidence generally where it is impossible to obtain a viva voce examination of the witness, and is not in conflict with Rev. St. § 861 [U. S. Comp. St. 1901, p. 661], and may properly be applied in an action at law in a federal court sitting within the state, where the witness is without the district, and more than 100 miles distant from the place of trial.

**10. ERROR—ADMISSION OF SECONDARY EVIDENCE—HARMLESS ERROR.**

In an action for personal injury, where plaintiff's injured leg was exhibited to the jury, the subsequent admission in evidence of a photograph showing the injury, even if it was incompetent as secondary evidence, was harmless error.

137 F.—4

**11. SAME—ARTICLES TAKEN TO JURY ROOM—PHOTOGRAPH.**

Permitting the jury in a personal injury case to take with them to the jury room a photograph of plaintiff after the injury was not reversible error, where the accuracy of the picture was not disputed.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 735.]

**12. STREET RAILROADS—ACTION FOR INJURY OF CHILD—INSTRUCTIONS.**

In an action to recover for the injury of a child two years old by a street car in the daytime, requests for instructions that neither the failure of the motorman to sound the gong on approaching the plaintiff, nor the speed of the car, contributed to or had any effect in causing the injury, were properly refused, where there was testimony tending to show that plaintiff was or should have been seen by the motorman for a long distance before he was reached, and that the speed of the car was 15 or 20 miles an hour until plaintiff was struck.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Barton Smith, for plaintiff in error.

Charles A. Thatcher, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The plaintiff in the court below, by his guardian, brought this suit to recover the damages sustained by him in consequence of the alleged negligence of the defendant in the management of one of its cars in a street of Toledo, whereby he was knocked down, and one of his feet was crushed by the wheel of the car to such an extent that it became necessary to amputate the foot and part of the leg between the ankle and the knee. At the time of the occurrence the plaintiff was about two years old. He had strayed away from the house where he was staying at the time, and wandered into the middle of the street and upon the track of the defendant, a street car company; and while moving about near to the eastern rail he was struck by the forward right-hand corner of a car coming from the south and thrown down, and his foot was crushed as above stated. The accident happened in the daytime in a straight street, and with nothing to obscure the sight of the child from the motorman. The evidence in regard to the speed at which the car was running differed considerably. From some of it the jury might have found that the speed was 15 miles an hour, and the jury might also have found that the speed was not stopped or lessened as the car approached the plaintiff.

In the plaintiff's petition, in stating the grounds for the jurisdiction of the court, the following allegations were made:

"First. The said Joseph L. Cameron is a minor, and the said George L. Little has been duly appointed and qualified by the probate court of Monroe county, state of Michigan, as his guardian, and is now acting as such. The said minor and his said guardian are residents and citizens of said county of Monroe, in the said state of Michigan.

"Second. The said defendant, the Toledo Traction Company, is a corporation duly incorporated under the laws of the state of Ohio, and at the time of the happening of the grievances hereinafter set forth, and until the 10th day of August, 1901, owned and operated a line of street railway in the city of Toledo, a municipal corporation duly organized under the laws of said state of Ohio."

Another street railway company was joined as defendant, which, as was alleged, had since the accident purchased the railway of the Toledo Traction Company, and had assumed and agreed to pay all its debts and liabilities. Such proceedings were had that the suit was dismissed as to said purchasing company, and the suit was thereupon prosecuted against the Toledo Traction Company. Subsequent to the commencement of the suit, the plaintiff, by leave of the court, filed an "amended petition," concerning which we only need to say that it repeated the allegations respecting the citizenship of the plaintiff in the identical language of the original petition. To this amended petition the defendant, the Toledo Traction Company, answered, admitting its incorporation under the laws of Ohio, that it was operating the street railway at the time of the accident, and that the plaintiff's foot was injured by a wheel of the defendant's car, but denied "each and every other statement and allegation in plaintiff's amended petition contained."

The case has been three times tried before a jury. Upon the last trial the jury rendered the following verdict:

"We, the jury in this case, being duly impaneled and sworn, do find upon the issues joined for the plaintiff, and do assess his damages at the sum of six thousand and five hundred dollars ($6,500).

"O. P. Norris, Foreman."

Judgment was entered accordingly. The defendant moved that the verdict and judgment be set aside and for a new trial, upon grounds, among which were two—one, that "the verdict was not sustained by sufficient evidence"; and another, that "the verdict is contrary to law." As we gather from the record, upon the hearing of this motion counsel for defendant urged that upon the trial no evidence had been offered by the plaintiff to prove that either he or his guardian were at the commencement of the suit citizens of the state of Michigan. Thereupon counsel for the plaintiff requested the court to impanel a jury and receive evidence which he proposed to offer in support of his allegations of the citizenship of the plaintiff and his guardian, and the due appointment of the guardian. The court ordered the judgment to be set aside, but not the verdict. It also denied the plaintiff's request to impanel a jury to determine whether the plaintiff was a citizen of Michigan, and whether the guardian had been lawfully appointed, and directed the hearing on those questions to be had before the court itself. The plaintiff produced witnesses who gave testimony tending to prove his contentions in these respects, and no opposing testimony was offered on the part of the defendant. But the defendant strenuously opposed this inquiry, denying at every step the authority of the court to entertain the question at all after the jury trying the case had rendered their verdict and been discharged, or, if it had such authority, to assume to try the question itself without a jury, and excepted throughout to the action of the court. The court made a finding in favor of the plaintiff upon all the questions involved in the inquiry, and thereupon restored the judgment.

Several exceptions were taken by the defendant to rulings of the

court upon the trial of the merits before the jury, which are stated in the opinion further on.

It is contended by counsel for the plaintiff in error that the court below did not acquire jurisdiction to try the case and render the judgment, and this challenge must first be attended to. Inasmuch as there are questions relating to the merits as well as to the jurisdiction, we may choose whether we will first certify the latter question to the Supreme Court, and, after receiving its answer, if that be in favor of the jurisdiction, proceed to determine the questions relating to the merits, or decide the whole case in the first instance. McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118, 35 L. Ed. 893. And as it seems to us that the question of jurisdiction here presented is concluded by decisions of the Supreme Court already made, we adopt the latter course. The contention as made rests primarily upon the insufficiency of the showing that the plaintiff was at the commencement of the suit a citizen of Michigan. In our opinion, the citizenship of the guardian was unimportant upon the question of jurisdiction. The right of action was that of the plaintiff. The recovery belongs to him. The guardian is a mere protector of the plaintiff's interest, differing in this respect from an administrator or trustee in whom the legal title is vested. Williams v. Ritchey, 3 Dill. 406, Fed. Cas. No. 17,734; Woolridge v. McKenna (C. C.) 8 Fed. 650, 668; Wiggins v. Bethune (C. C.) 29 Fed. 51; Voss v. Neineber (C. C.) 68 Fed. 947.

Some embarrassment arises, though it has not been urged by counsel, upon the form of the allegation in the petition, which is that the plaintiff is a citizen "of said county of Monroe, in the state of Michigan." It is certainly a very inexact form of allegation. But considering the purpose for which it is made, and the facts subsequently developed in the record, we think it right to construe the allegation as one importing that the plaintiff is a citizen of Michigan, residing in or being an inhabitant of the county of Monroe. As it stands, it has no other meaning having any significance to the citizenship required by the law of federal jurisdiction. Besides, the construction we are disposed to put upon this language has been the one which has been accepted and acted upon throughout the case by counsel on both sides and by the trial court. But the averment is helped out. In the finding of the court upon the special inquiry made by it, it is stated that "the court finds, in favor of the plaintiff, that the said plaintiff, Joseph L. Cameron, and the said George L. Little were at the time of the commencement of this suit citizens and residents of the state of Michigan"; showing also, as we think, that the court treated the allegation as equivalent to one in due form. Thus it has served every purpose of a proper allegation. It is well settled that we may refer to the whole record to make out, if we fairly can, the conditions on which the jurisdiction may rest.

An objection upon which stress is laid by counsel for plaintiff in error is this: The case was tried upon the amended petition filed a considerable time after the commencement of the suit, and the language respecting the citizenship of the parties is in the present

tense; repeating in this respect, as we have said, the words of the original petition. Counsel urge that the amended petition superseded the original, and becomes the only one to which the court can have regard, and upon this assumption it is said the showing is only that the proper citizenship existed at the time of filing the amended petition. But the court had already acquired jurisdiction upon the filing of the original petition and service of process, and it would not lose it by a mere amendment of the pleadings touching the merits of the case. A similar question was presented in Mexican Ry. Co. v. Pinkney, 149 U. S. 195, 13 Sup. Ct. 859, 37 L. Ed. 699, and received a similar answer. Besides, the original petition remains a part of the record, and may be looked into to find whether the necessary conditions appear for entertaining the suit.

It is further contended that there was no evidence upon the trial in respect to the citizenship of the plaintiff, and that therefore the court erred in not directing a verdict for the defendant, as requested by its counsel. It is to be noted in the first place that the counsel did not assign this as a reason why such a direction should be given, and it does not appear that any such question was raised during the trial. It was, indeed, one of the issues. By the rules of pleading prescribed by the Code of Ohio, all the material allegations of the petition which are not defective or insufficient on their face must be answered; otherwise they are admitted. Objections in the nature of a plea to the jurisdiction or going to the merits must be raised by the answer. In this case the allegations touching the jurisdictional facts were material, and were met and covered by the general denial of the answer. Thus an issue was raised. The jury responded that the allegation was true. We have some doubt whether the defendant, in such circumstances, upon a bill of exceptions containing all the evidence, and showing that there was no proof upon that subject, but showing also that no question upon it was raised in the court below, could successfully urge that for such reason the verdict and judgment should be set aside. But it is not necessary to decide how far the court will extend its inquiry for reasons impugning its jurisdiction. In the case of Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579, which was tried under the Code of Nebraska, which is in all relevant particulars like that of Ohio, the question arose upon the failure of the special verdict to declare any finding upon the issue relating to the jurisdiction. If in that case the verdict had found the fact to be as alleged in the petition, as the jury have done in the case before us, it may well be doubted whether the court would have searched the evidence to find whether there was any proof justifying the finding.

It is contended for defendant in error that, under the practice in the courts of Ohio, averments which qualify the plaintiff to bring the action must be met by a specific denial, if the defendant proposes to deny them, and that a failure to specifically deny them admits them to be true; and it is thereupon insisted that the question came to an end by the failure of the defendant below to con-

trovert by proper pleading the qualifying averments of the petition. The case of Brady v. National Supply Co., 64 Ohio St. 267, 60 N. E. 218, 83 Am. St. Rep. 753, which is relied upon by defendant in error, holds that the description of the plaintiff in the petition as an administrator, executor, or the like, is not a material averment, within the meaning of the Code, and that a general denial is not sufficient to raise an issue upon it. But in the federal practice an averment of the citizenship of the plaintiff in a suit depending upon a diversity of citizenship as the foundation of the jurisdiction is a material averment, and the reasons given for the ruling in the case of Brady v. National Supply Co., supra, do not apply. Roberts v. Lewis, supra, is of itself a sufficient authority for this distinction, and for the different consequences which result therefrom. It is upon these grounds that we conclude that the averment of the citizenship of the plaintiff was put in issue and determined by the verdict. But for the decision in Roberts v. Lewis, we should have supposed that the burden of proof was upon the defendant.to disprove the prima facie sufficient averment of the plaintiff, as was always held upon pleas in abatement in the earlier practice. But the decision in that case seems to assume that the burden was on the plaintiff, and that the original presumption was rebutted by the defendant's denial in his pleading. Probably the conclusion of the Supreme Court was rested upon the different mode of pleading brought in by the regulations of the Code. Accepting this conclusion, and assuming that we may go behind the verdict to find whether it rested upon any evidence sufficient to support this particular allegation of the petition, and that, if it did not, the question was still an open one, we come to the proceedings subsequent to the verdict and judgment.

Counsel for the defendant insist here, as they did below, that the Circuit Court transcended its authority when it took upon itself the determination of the question which the counsel on both sides and the court also seem to have supposed to remain unsettled. Under the ruling in Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690, counsel for defendant might still have advanced by some appropriate method a suggestion to the court that for reasons stated the court did not have jurisdiction, and that the matter should be investigated. But they did not do this, and seem to have relied confidently upon their objection that the court had no power to make such an investigation, or, if it had, that it could not do so without a jury. We are of opinion that the defendant had already lost any right which it might have had under any law in force prior to the act of 1875 to contest the jurisdiction, and, further, that it has no right under that act to complain of the course taken by the court in pursuing the investigation. All concerned had proceeded upon the trial as if the jurisdiction existed, and the case had ended in a verdict and judgment. If the question was not foreclosed, and, under the authority of the act of 1875, the court for any reason doubted its jurisdiction, it might institute an inquiry. And in doing this the court was not required, as

counsel erroneously suppose, to impanel a jury. It might do that, or it might itself hear the evidence, and then say whether it appeared "to the satisfaction of the court" that for any reason it did not have jurisdiction. The language of the act of 1875 imports that the court may adopt such methods of satisfying itself as the nature of the case may require.

In Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682, there had been, as here, a trial, verdict, and judgment in an action at law. During the course of the trial it was suggested that the amount or value involved was not sufficient to give jurisdiction to the court. But the court directed the trial to proceed to a verdict, and reserved the question raised for its own determination. After the verdict and judgment had been entered for the plaintiff, the court set aside the verdict and judgment, and entertained a motion made by defendant to dismiss the cause for want of jurisdiction, and gave leave to the parties to file affidavits in regard to the value of the land in controversy. Upon consideration of the motion, the court sustained it, and dismissed the suit for want of jurisdiction. The plaintiff excepted to this action of the court, and took a bill of exceptions. In delivering the opinion of the court, Mr. Justice Shiras said:

"The statute [referring to the act of 1875] does not prescribe any particular mode in which the question of the jurisdiction is to be brought to the attention of the court, or how such question, when raised, shall be determined." And again: "The questions might arise in such a shape that the court might consider and determine them without the intervention of a jury. And it would appear to have been the intention of Congress to leave the mode of raising and trying such cases to the discretion of the trial judge."

No doubt was expressed as to the validity of the proceeding, and the court proceeded to review the decision of the trial judge upon the same data as he had done.

In Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171, the defendant pleaded that the damages were fraudulently magnified by the plaintiff in its petition for the purpose of giving the United States court jurisdiction. Before trying the merits, the judge took up the consideration of the plea, refused the plaintiff's demand for a jury, and, having found that less than $2,000 was really involved, dismissed the suit. On a writ of error sued out by the plaintiff, the action of the trial court was in all things affirmed. In both these cases the finding of the court below in respect to the jurisdictional fact was reviewed by the Supreme Court on a bill of exceptions, upon the consideration given in the first of these cases to the question of the proper mode of review. Pursuing that course, we come to the question whether the Circuit Court, in view of the evidence produced at the hearing, taken in connection with the facts appearing on the record, erred in finding that the plaintiff was at the commencement of the suit a citizen of Michigan. The court was acting under the authority of the act of 1875, and it is settled that it must clearly appear that the court is being imposed upon, in order to justify a dismissal of the cause; and we may add that this rule is applied with increased rigor when the presentation of the objec-

tion is long delayed, as when the case has been tried and a verdict and judgment on the merits has been reached before the attention of the court has been drawn to it; presupposing, of course, that the lack of jurisdiction is not apparent on the record. Deputron v. Young, 134 U. S. 241, 10 Sup. Ct. 539, 33 L. Ed. 923. On the hearing it was shown that on June 26, 1901, the mother of the plaintiff, upon the ground of extreme cruelty and willful neglect to provide her and their child with the necessaries of life, obtained a decree of divorce from her husband in the court of common pleas of Lucas county, Ohio, by which decree the care, custody, and control of the plaintiff was awarded to her; permission being given the father, "when here, to see the child at reasonable times." And at said hearing in the court below she testified that the plaintiff was born in Toledo, and that after the divorce and in February, 1902, she went to Monroe, in the state of Michigan, to accept a position which had been offered her there; that she took the plaintiff with her, and that she and the plaintiff had lived in that state ever since; that during that time she took care of the plaintiff, keeping him with her. Letters of guardianship of the plaintiff were granted to Little August 22, 1902, by the probate court of Monroe county, Mich. They were offered in evidence and received over an objection that the jurisdiction of the probate court to issue them was not shown. But whether the letters were granted with or without jurisdiction, the facts that they had been granted to a resident and citizen of Michigan, and that he had accepted and acted upon them, had some bearing upon the permanency of the plaintiff's residence in that state. No evidence on this issue was tendered by the defendant. It is true, she did not testify what her intention was in removing to Michigan, and while she resided there, in relation to the permanency of her residence; but it may be inferred from her continuing to "live" there, as she said, from February, 1902, to the time when she testified, which was in June, 1904. We think it cannot be held that the court erred in its finding in favor of the plaintiff. Certainly it cannot be said that it clearly appeared that the plaintiff was not a citizen of Michigan. Counsel for plaintiff in error contends, first, that the domicile of the father determines the domicile of the child, and that the father is not shown to have been at any time a citizen of Michigan; and, second, that the plaintiff became a ward of the court by virtue of the divorce proceedings in the Lucas county court of common pleas, and that the mother had no lawful right to transfer him from the domicile of his birth to another state, and thereby confer a foreign domicile.

It is doubtless true that the general rule is that the domicile of the child follows that of the father. But this rule does not hold when the parents are judicially separated, and the custody of the child is awarded to the mother. Barber v. Barber, 21 How. 582, 16 L. Ed. 226; Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604; Wiggins v. Bethune (C. C.) 29 Fed. 51.

It would be inconsistent with such a decree that the domicile of the child should continue to be that of the father, for the custody

and control of the child, upon which the father's domicile is imputed to the child, no longer exists, but is transferred to the mother. Nor can we think that the power of control of the Lucas county court of common pleas over the plaintiff acquired by the divorce proceedings prevented the plaintiff from acquiring a domicile in another state. It would be an unreasonable and anomalous thing to hold that the mother would be tied down to a fixed domicile in Ohio, if her necessities or interests required her to remove to another state; and it would be equally so to hold that the domicile of the child had become so fastened by the divorce proceedings that he could not acquire a domicile elsewhere, notwithstanding he had acquired a fixed home there and all his relations to the place of his original domicile have been broken off.

We do not consider it necessary to decide whether the objection to the guardian's authority under his letters from the probate court of Monroe county, because of the lack of proof of the necessary steps to confer jurisdiction upon that court, was valid or not. Probably it would have been a good objection to the letters if made at a proper time. The Supreme Court of Ohio, in the case of Brady v. National Supply Co., above referred to, held that under the Code the allegation in the petition that the plaintiff is an adminstrator, executor, or other trustee was not a material averment, within the meaning of that term in the provision of the Code prescribing what issues may be raised by a general denial in an answer. There are even stronger reasons for applying that rule when the question arises upon the status of guardian whose relation is that of a protector or next friend. We have already referred to the distinction between such averments and those of jurisdictional facts in pleadings in the courts of the United States. The defendant failed to plead specially any objection to the guardian's representation, and the propriety of it was thereby admitted. It was not a jurisdictional fact. At all events, such an objection as this could not be first raised after the verdict and judgment.

Several assignments of error in rulings upon the trial of the merits remain to be considered. The most important of these rulings was the admission of the testimony of a witness (Pease) given on a former trial of the cause. This witness at the time of this trial, as well as at the time of the former trial, resided at Elkhart, Ind.— a place without the jurisdiction of the court, and more than 100 miles distant from the place of trial. His absence was sufficiently proven. A stenographer employed by both parties, who took down his testimony on the former trial, was called, and testified that he had his shorthand notes of the testimony of the witness, and had written out a transcript thereof, which he produced. It was thereupon offered in evidence by the plaintiff. The defendant's counsel consented that the transcript might be used instead of the shorthand notes, but objected to the evidence; stating the grounds of the objection as follows:

"(1) That there is no statute authorizing the reading of this testimony.
"(2) That the state statute is not applicable to the practice in this court.
"(3) That the absence of the witness from the jurisdiction of the court has not been shown."

.The objection was overruled, the evidence was admitted, and the defendant excepted. It is now insisted that this ruling was in contravention of section 861 of the Revised Statutes [U. S. Comp. St. 1901, p. 661], which declares that "the mode of proof, in the trial of actions at common law, shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided."

It seems to us very doubtful whether the objection was sufficiently definite to raise the question which counsel now propose. The evidence was not offered under the authority of any statute of the United States. And it is improbable that counsel had in mind the particular ground of objection they now urge, or that the court understood the objection to refer to the provision of the statute above quoted. But waiving this doubt, we will consider the objection now urged as having been duly taken. In order to a just construction of this statute, it is necessary to recur to the history of the common law relative to the subject, and the circumstances under which the statute was enacted. Although the courts of chancery and of admiralty had always exercised the power to issue commissions to take depositions abroad, as well as within their jurisdictions, yet in the common-law courts of England the mode of proof was and had always been the same as that prescribed by this statute. And they had not, or at least did not claim to have, the power to authorize the taking of depositions to be read upon the trial of causes before them. And they did not exercise such authority until the passage of the act of 13 Geo. III, c. 63, which empowered those courts to issue commissions for the examination of witnesses in cases where the cause of action arose in India. Afterwards, but not, as we understand, until after the date of the judiciary act of 1789, this authority was enlarged by other acts of Parliament and made general. When Congress was engaged in the establishment of the inferior courts authorized by the Constitution, and defining their jurisdiction, their powers, and their modes of procedure, it was mapping out a scheme for the judicial department of a government which succeeded the institutions of the older régime. Separating the jurisdictions into those of courts of law, of equity, and of admiralty by the familiar lines of demarcation, it was natural that the same motives and purposes as those which so universally, in this country, inspired the adoption of the substantive law of England, should induce, as far as practicable, provisions for retaining in the several courts similar modes of procedure. Congress therefore declared that the mode of proof in actions at law should be the mode familiar to the common-law courts. But being cognizant of the embarrassment which those courts had experienced in obtaining and using the evidence of persons who could not be brought into court and examined orally, and cognizant, also, as the authors of our statute undoubtedly were, of the precedent which had shortly before been set by the act of Parliament first mentioned, Congress added to the general language of the provision the exception which it proposed to make, whereby the court should have power to authorize the taking of depositions in the circumstances thereinafter specified. So that, in substance, what is called an "ex-

ception" was simply an opening for letting in an addition to the powers of the court as they had been customarily exercised. But there is no warrant for thinking that in doing this Congress had any thought of altering the rules of evidence which obtained in such courts, or intended to exclude evidence which, without reference to the use of depositions taken under that statute, would be admissible upon the generally recognized principles of evidence.

We are therefore of opinion that the question whether the testimony of this absent witness, taken and written down on the former trial by the common employé of the parties, was properly admitted, is to be tested by the general rules of evidence, rather than by any requirement in the statutory provisions above referred to concerning the mode of procedure. The case Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117, and the language of the learned justice who delivered the opinion of the court, are principally relied on by counsel for the plaintiff in error. But we think that nothing was there decided which is in conflict with the views we have expressed. The method of obtaining proof provided for by the statute of the state of New York was not a method known to the common law, nor could such evidence be used consistently with its rules of evidence, for the witness was within the jurisdiction, and there was no claim that he was going beyond it, nor was any other reason shown why he could not be brought in for oral examination at the trial. The rule prescribed by Rev. St. § 861 [U. S. Comp. St. 1901, p. 661], was a positive enactment of the rule of the common law. The New York statute was in conflict with that rule, and could not, therefore, prevail in the courts of the United States. Nor could the deposition be taken under the exceptions contained in the sections following section 861, for neither of those sections provided for the taking of depositions in such circumstances. If, therefore, the testimony which is the subject of contention in the case before us was admissible by the common-law rules of evidence, the provisions for taking depositions are not material. And we think that not only in the English courts, but in the federal as well as in the state courts, the admissibility of such proof has been quite constantly regarded as controlled by the general rules of evidence, and the proof held to be admissible when the witness who delivered the testimony on the former trial is dead or has become insane or resides beyond the reach of the process of the court, or, as held in some instances, when the witness has lost his memory of the events he had formerly testified about. Other circumstances have sometimes been recognized as sufficient to justify the admission of the former testimony. The meaning of the condition that the witness resides beyond the reach of process is illustrated by certain decisions of the Supreme Court of Michigan, where the court held, in Howard v. Patrick, 38 Mich. 795, and Labar v. Crane, 56 Mich. 585, 23 N. W. 323, that the testimony of a witness who resides abroad, taken on a former trial, is admissible on a subsequent trial, but in Kellogg v. Secord, 42 Mich. 318, 3 N. W. 868, held that the rule did not apply when a resident of the jurisdiction was only temporarily absent, and had not been subpœnaed, and no effort had been made to

secure his attendance. There was a like ruling upon similar facts in Stein v. Bowman, 13 Pet. 209, 10 L. Ed. 129. The parties must be the same, or at least in privity, with those who were in controversy in the former suit, and have had an opportunity to cross-examine the witness; and, when it is not the same suit, the issues must be substantially the same. In some instances the courts have declined to apply the rule in criminal cases, but in civil cases the decisions are quite uniform to the effect that such testimony is competent, except in Massachusetts and New York, where the rule is otherwise, as hereinafter explained. 1 Greenleaf on Evidence, § 173; 1 Wharton on Evidence, §§ 177, 178.

. The last-named author collects a considerable number of cases, nearly if not quite all of them being cases decided in jurisdictions where either by the inherent power of the court or by statutory provisions the taking of depositions was authorized. Many other authorities than those cited by Wharton, but to the same effect, are cited in 2 Wigmore on Evidence, § 1404, note 5, in support of the doctrine of the text, which is the same as that of the other authors above cited. Among the more recent cases are McGovern v. Hays, 75 Vt. 104, 53 Atl. 326; Louisville Water Co. v. Upton, 36 S. W. 520, 18 Ky. Law Rep. 326; Radford v. Georgia & Ala. Ry., 113 Ga. 627, 39 S. E. 108; Atchison, T. & S. F. R. Co. v. Osborn, 64 Kan. 187, 67 Pac. 547, 91 Am. St. Rep. 189. We cannot make room for canvassing the cases in detail, but will refer to some of those in the courts of the United States, which, of course, are all later than the judiciary act, in which section 861 and the provisions for taking depositions are found.

In Sims v. Hundley, 6 How. 1, 12 L. Ed. 319, the certificate of a notary was held, under a statute of Mississippi, competent evidence of facts which by the general rule should have been proven by him as a witness.

In Philadelphia, Wilmington & B. R. Co. v. Howard, 13 How. 307, 334, 335, 14 L. Ed. 157, the plaintiff on the trial offered to prove certain testimony of a deceased witness given on a former trial of an action in a state court which involved the same subject, and the parties were privies with those in the later suit. The evidence was objected to, but the objection was overruled. Mr. Justice Curtis, delivering the opinion of the Supreme Court, said:

"We consider the evidence was admissible upon two grounds [stating one], and also because, the witness being dead, his deposition, regularly taken in a suit in which both the plaintiff and defendant were parties, touching the same subject-matter in issue in this case, was competent evidence on its trial."

In Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299, which was an action at law, the plaintiff offered to prove the contents of a deposition of a witness living beyond the reach of process, but which had been lost. This was objected to, but admitted. The Supreme Court held there was no error, saying by Mr. Justice Swayne, who delivered its opinion:

"In Harper v. Cook, 1 Car. & Payne, 139, it was held that the contents of a lost affidavit might be shown by secondary evidence. The necessity of re-

taking it was not suggested. In the present case the witness lived in another state, and more than one hundred miles from the place of trial. The process of the court could not reach him. For all jurisdictional purposes, he was as if he were dead."

In Ruch v. Rock Island, 97 U. S. 693, 24 L. Ed. 1101, the witness was dead. The evidence offered to prove his former testimony was the oral evidence of witnesses who heard the deceased witness testify, and had taken notes of it. Upon an objection and exception, the Supreme Court affirmed the ruling of the court below admitting the evidence.

In Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641, the plaintiff proved that the depositions of certain witnesses in the case had been lost by fire, and thereupon offered copies in evidence. The objection made to the introduction of the copies was that the death of the witnesses was not shown, nor was it proven that they were incompetent to testify, or that their deposition could not be retaken. The objection was overruled. Upon an exception to this ruling the Supreme Court said at page 46 of 108 U. S., page 322 of 2 Sup. Ct. (27 L. Ed. 641):

"But if the witnesses had lived in another state, and more than a hundred miles distant from the place of trial, proof of the contents of their depositions would have been admissible. Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299. Therefore, to have made the objection tenable, it should have also been put upon the ground that the witnesses were not shown to reside in another state, and more than a hundred miles from the place of trial. This it did not do. When a party excepts to the admission of testimony, he is bound to state his objection specifically, and in a proceeding for error he is confined to the objection so taken. Burton v. Driggs, ubi supra. The original depositions were taken in the city of Washington. It is therefore probable that the witnesses resided there. If the copy of the depositions had been objected to because it was not shown that the witnesses resided out of the district, and more than a hundred miles from the place where the court was held, the plaintiffs below might have supplied proof of that fact. The objection, as it was made, was not broad enough and specific enough, and was therefore properly overruled, and the evidence admitted."

In Mattox v. United States, 156 U. S. 239, 15 Sup. Ct. 337, 39 L. Ed. 409, the same question arose in a criminal case. The witness who had given the testimony on the former trial had since deceased, and the question was whether the stenographer's notes of his testimony taken on the former trial could properly be admitted in evidence on the new trial. The objection was that this infringed the constitutional provision that the accused shall "be confronted with the witnesses against him." But the Supreme Court held otherwise, and fortified its conclusion by reference to the long-continued practice in England and in this country, which showed that the admission of such evidence was not regarded as in violation of the constitutional provision. And Mr. Justice Brown, in delivering the opinion of the court, said at page 244 of 156 U. S., page 340 of 15 Sup. Ct. (39 L. Ed. 409), what seems to us a consideration of vital importance:

"The substance of the constitutional protection is preserved to the prisoner, in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination."

The question was presented to the Circuit Court of Appeals for the Eighth Circuit in the case of Chicago, St. P., M. & O. Ry. Co. v. Myers, 80 Fed. 361, 49 U. S. App. 279, 25 C. C. A. 486, in a civil case, where the witness who gave the evidence on the former trial was beyond the reach of process. The court held that in general such evidence is admissible, though, because the stenographer's notes were imperfect in that case, they were held properly rejected. Judge Thayer, in delivering the opinion of the court, said:

"The rule appears to be established in Minnesota, where this case was tried, that such testimony is admissible. Minn. Mill Co. v. Ry. Co., 51 Minn. 304, 53 N. W. 639; King v. McCarthy, 54 Minn. 190, 55 N. W. 960. And the same rule, it seems, prevails in some other jurisdictions. Ry. Co. v. Elkins, 39 Neb. 480, 58 N. W. 164, and cases there cited. We can see no substantial objection to the admission of such testimony, when on the first trial the witness was fully examined and cross-examined, provided always that the stenographic report of his testimony is proven to the satisfaction of the trial court to be correct, by the person by whom it was reported, and provided further that the witness is beyond the reach of process of the court, and his personal attendance cannot be secured. Such testimony, we think, may very properly be accorded the same weight as a deposition duly taken on notice."

And we think the statement that the testimony of all witnesses in common-law cases tried in the federal courts must find its warrant in the very terms of section 861, and the exceptions following it, providing for the taking of depositions, is not correct, and is not required by the proper construction of those statutes, and in many instances would work great hardship and injustice. The presence of the witness cannot be compelled. True, his deposition might have been taken. But that would not be his testimony in open court. There would be no confrontation of the jury with the witness. It is not disputed that a deposition once taken and used on a trial may be used on a subsequent trial of the same case. In the present instance the testimony taken on the former trial was the full equivalent of a deposition taken de bene esse.

The principal exceptions to the jurisdictions in which it is held that the permanent residence of the witness beyond the reach of the process of the court furnishes the same ground for the admission of his former testimony as would his death are the states of Massachusetts and New York. It is of interest to note how the rule that only the death of the witness furnishes ground for the admission of such testimony had its origin in those states. The leading case in Massachusetts was that of Le Baron v. Crombie, 14 Mass. 234. In that case the first trial was before a justice of the peace. Upon appeal a second trial was had in the circuit court. A witness who testified on the first trial had in the meantime become incompetent by reason of a conviction for larceny. The plaintiff offered proof of his former testimony, which was received. The Supreme Court held that this was error. In the opinion delivered by Parker, C. J., it was said:

"We believe that in England the proof of such declarations has been limited to the case where the principal witness is dead, for we find no case where such evidence has been admitted when the testimony of the principal has been lost by any other cause. Indeed, the depositions of witnesses taken in

chancery in a cause pending there—the witnesses being competent at the time —are not admitted at the trial of the same cause in the courts of common law if in the meantime the witnesses have become incompetent by reason of an interest devolved upon them without their agency."

While there is some discrepancy in the English Reports upon the point last mentioned in this quotation, it was certainly an erroneous impression that a rule for restricting the admission of the former testimony to cases where the witness has since died was settled by the law of England, as was the impression that no case was to be found admitting any other ground. It is true, there were a number of cases which held that death was sufficient reason, and where the rule was stated in that form. But that was not holding that no other cause would be sufficient. On the other hand, there had been for a long time a course of decisions that the continued absence from the jurisdiction furnished an equally valid reason for receiving the former testimony of the witness, and frequently these conditions were put in the alternative. Thus in the case of Thatcher and Waller, T. Jones, 53, it was held by the King's Bench, in 28 Car. II, all the judges agreeing, that the deposition of a witness taken before a coroner, when it was shown that the witness had gone beyond seas, might be read upon the trial, and the court said that "the case was all one as if he had been dead." And on the trial in King's Bench of an issue directed out of chancery in Lord Altham v. Earl of Anglesea; in 8 Anne, Gilbert's Eq. Rep. 18, it was held by Holt, C. J., all the judges agreeing, that the depositions of witnesses taken on a case in Ireland between the same parties involving the same matter might be read, the reason given being that "there is no way to fetch the person out of Ireland"; "no subpœna runs thither;" and the court added, "This is like the common case where the deposition of a person that is sick or dead or beyond sea is admitted as evidence." In 1707, as is said in Fry v. Wood, 1 Atk. 445, temp. Lord Hardwicke, "it was agreed in this case, when a person has been examined in chancery, that in a case at law between the same parties his deposition may be used in evidence if it can be proved that the witness is dead, or by reason of sickness, etc., is not able to attend, or that he is out of the kingdom, or otherwise not amenable to the process of the court." In Patterson v. St. Clair, Barn. 268, it was held by the King's Bench that the deposition of a witness who at the time of the trial was in Scotland might be read, notwithstanding the objection that "the witness ought to have given his testimony upon oath in person." And in Ward v. Sykes, Ridgeway, 193, it was said that depositions taken de bene esse will not be allowed to be read "without proof by oath of death or absence beyond sea." It would seem from the language of the report that this was said of a trial at common law, but this is not certain. However, the practice in allowing the use of depositions de bene esse in such circumstances appears to have been the same in the courts of common law and of equity. In Falconer v. Hanson, 1 Camp. 171, tried before Lord Ellenborough in 1808, the deposition of a witness who was a seafaring man, taken while his vessel was lying in the Thames, was offered in evidence. And the report

states that the chief justice was disposed to receive the deposition upon the presumption that the witness was absent from the kingdom, if it could be shown that any efforts had been recently made to find him. But he thought that, in the absence of such proof, the evidence of his absence was too vague to admit the deposition. But the rule stated in Le Baron v. Crombie has been adhered to in Massachusetts. The leading case in New York appears to be that of Wilbur v. Selden, 6 Cow. 164, which was decided by Chief Justice Savage on a motion for a new trial. On the trial of the case the plaintiff had offered proof of what a witness had sworn to in a former action relating to the same matter between parties, with whom the then parties were in privity, upon proof that the witness, who had resided in New York, had left the city, declaring that he was going to the back parts of Pennsylvania, and could not be found on diligent inquiry. The evidence was objected to, but admitted by the judge. The chief justice held that this was error, and said that in order to admit such evidence the witness must be dead; citing 1 Phil. Ev. 215; Butler, N. P. 243-4, T. R. 290; Le Baron v. Crombie, 14 Mass. 234, above cited; and Lightner v. Wike, 4 Serg. & R. 203. In 1 Phil. Ev. 215, the author is treating of unsworn declarations, in the nature of hearsay, of attesting witnesses to wills, who have since died. In another part of his work (vide note "a," Sills v. Brown, 9 Car. & P. 601), he states the rule in regard to depositions thus:

"A book of authority [Buller's Nisi Prius], after stating the general rule that depositions are not evidence where there can be no cross-examination, adds, by way of exception, 'yet if the witnesses examined on a coroner's inquest, be dead or beyond sea, their depositions may be read, for the coroner is an officer appointed on behalf of the public to make inquiry about the matters within his jurisdiction.' "

And Mr. Phillipps further states:.

"It seems to be the prevailing opinion that they are admissible, though the prisoner may have been absent at the time of taking the inquisition."

And in Sills v. Brown, Coleridge, J., held, in an action for damages, that the deposition, taken before a coroner, of a witness shown to be beyond sea at the time of trial, was admissible. It would seem to be a proper inference that the impartial attitude of a coroner was a guaranty of a full examination of the witness. Buller's Nisi Prius is not authority for the rule stated in Wilbur v. Selden. At the page referred to (243) the author is speaking of a case where testimony which the defendant had put into his case on a former trial was offered in an action in which the other party was plaintiff, and in such case it was said the evidence would be admissible "in case the witness be dead or cannot be found." In the next paragraph he restates the rule, but mentions only the death of the witness. But it is obvious this is only a short way of stating the principle, for he refers to the instance of depositions as analogous where, he says, the same exceptions in favor of the admissibility of such evidence obtain; and at page 239 other instances are stated in which the former deposition is competent: First, where the witness is dead; second, where he is sought for and cannot be found (which

obviously means within the jurisdiction); and, third, when he has been subpœnaed, but has fallen sick by the way.

In the case of King v. Jolliffe, 4 T. R., 285, 290, the question was whether an affidavit which had been taken and used as the basis of a criminal information could be used as the basis of another information concerning the same matter. It was held that it could. In delivering judgment, Lord Kenyon, C. J., said: "So, in courts of law, the evidence which a witness gave on a former trial may be used in a subsequent one if he dies in the interim." There was no actual decision upon any question relevant to the case of Wilbur v. Selden. And Lord Kenyon had himself recently said in Rex v. Eriswell, 3 T. R. 707, 721, that when the witness had become insane the case is the same as if he were dead. It would therefore seem that, when he spoke of the former testimony of a deceased witness, he was using that instance as typical of a rule or principle. The question in Lightner v. Wike was whether proof of what a witness had sworn to in another trial, relating to the same subject, was admissible in the later suit. The Supreme Court of Pennsylvania held that such evidence was competent in cases where the witness had deceased; that this was from necessity, because the witness could not be examined. But the court did not hold that the death of the witness was the only condition on which it would be received, but said that exceptions to the general rule requiring viva voce examination would not be extended further than necessity required. The case did not require the court to make any declaration as to what circumstances would create such a necessity, and no such declaration was made. The necessity which the court speaks of is that which arises from the impossibility of a viva voce examination. The same court, a month later, held in Magill v. Kauffman, 4 Serg. & R. 317, 8 Am. Dec. 713, that, for the purpose of the rule, the permanent absence of the witness in Ohio was the same thing as his death. The later cases in Pennsylvania have established the rule in that state upon the principle which we must think is the sound one—that if, from any cause, the viva voce examination of the witness cannot be had, his former testimony should be received, when the other recognized conditions which we have referred to are established.

The facts in the case of Wilbur v. Selden were like those in Kellogg v. Secord, 42 Mich. 318, 3 N. W. 868, and Stein v. Bowman, 13 Pet. 209, 10 L. Ed. 129, supra; that is to say, the witness had been a resident in the jurisdiction, and had gone away, but it was not shown that he was permanently absent. But the courts of New York have since followed the dictum that the witness must be dead, although the Supreme Court, in Crary v. Sprague, 12 Wend. 41, 45, 27 Am. Dec. 110, said: "It is obvious there can be scarcely a shade of difference between death and absence, either in principle or hardship." Of course, the only object of our reference to these decisions in Massachusetts and New York is to determine their accuracy in exhibiting the common-law rule of evidence.

137 F.—5

For the defendant in error it is contended that a statute of Ohio containing provisions applicable to the question we are considering is entitled to recognition and adoption in the federal courts sitting in the state, by virtue of section 721 of the Revised Statutes [U. S. Comp. St. 1901, p. 581], which provides that:

"The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

The statute referred to is section 5242a, Rev. St. Ohio (Bates' Ann. St. p. 2799), and reads as follows:

"Whenever a party or a witness, after testifying orally, die, or is beyond the jurisdiction of the court, or can not be found after diligent search, or is insane, or through any physical or mental infirmity is unable to testify, or has been summoned, but appears to have been kept away by the adverse party, if the evidence given by such party or witness has been or shall be incorporated into a bill of exceptions in the case wherein such evidence was given, as being all the evidence given by such party or witness, and which bill of exceptions shall have been duly signed by the judge or court before whom such evidence was given, the evidence so incorporated into such bill of exceptions may be read in evidence by either party on a further trial of the case, and in case no bill of exceptions has been taken or signed as aforesaid, but the evidence of such party or witness has been taken down by any competent official stenographer the evidence so taken by such stenographer may be read in evidence by either party on the further trial of the case, and shall be deemed and taken as prima facie evidence of what such deceased party or witness testified to orally on the former trial, or if such evidence has not been taken by such a stenographer, the same may be proven by witnesses who were present at the former trial, having knowledge of such testimony. All testimony thus offered shall be open to all objections which might be taken, if the witness were personally present."

It will be seen that it contemplates substantially such conditions as were recognized by the common law as sufficient to justify proof of the former testimony of a witness, and provides a mode of proof in such conditions. It is insisted by counsel for plaintiff in error that this statute is in contravention of section 861 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 661], and the sections following. But if, as we have endeavored to show, these sections of the Revised Statutes of the United States do not exclude proof of former testimony in such conditions, there would seem to be no conflict between the state and federal statutes, and that the former might be recognized as applicable to the case. Connecticut Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708; Bucher v. Chesire Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; Nashua Savings Bank v. Anglo-American Co., 189 U. S. 221, 23 Sup. Ct. 517, 47 L. Ed. 782.

It is assigned as error that the court admitted in evidence a photograph of the plaintiff against the defendant's objection. The bill of exceptions shows that, upon its being offered, counsel for defendant objected upon the ground that it was incompetent, and because, "the injured leg having been exhibited to the jury, the photograph is not the best evidence on the subject." As the objection that it was incompetent, of itself, was too indefinite, we must assume that the other ground was intended to present the

particular reason why it was thought the evidence was incompetent. But the objection to secondary evidence is harmless error where the same thing is shown by primary evidence. It is argued that the defendant was prejudiced by this repetition of the evidence of the plaintiff's injury. But we think no legal prejudice resulted. The plaintiff was present during the trial, and his condition as shown by the photograph was in constant view. It would not have been ground for reversal if the court had permitted the plaintiff's leg to have been shown a second time to the jury, or to have permitted a witness to the accident to repeat his evidence of the distressing incidents, or to have permitted an unnecessary number of witnesses to testify about them, whatever we might think of the uselessness of such a proceeding.

It is also complained that the court erred in overruling the defendant's objection to the photograph being sent out with the jury. The objection was that it was incompetent. The record does not show that the photograph was in fact taken to the jury room, but only that the court overruled the plaintiff's request that it might be. But waiving these suggestions, we cannot say there was error in the ruling. There is much diversity in the practice of the courts in permitting the jury to take out articles which have been received in evidence. Some of the cases are discussed in Cudahy Packing Co. v. Skoumal, 125 Fed. 470, 60 C. C. A. 306, where it was held not to be reversible error that certain tools which had been offered in evidence to prove the defendant's negligence in supplying the plaintiff with them were taken to the jury room and examined by the jury while making up their verdict. In giving the opinion of the court, Judge Thayer said:

"The jury were clearly guilty of misbehavior, if, in violation of directions given by the trial judge, the tools in question were taken to their room. But it does not follow that such misbehavior was fatal to the verdict. In our opinion, it ought not to have that effect unless it is reasonable to conclude that the defendant company was in some way put to a disadvantage or was prejudiced by the action of the jury, and did not have a fair trial of the issues involved in the case. It does not seem reasonable to conclude that either party was prejudiced by the action of the jury in taking the hammer and the flatter to their room for the purpose of making a further examination thereof. They were inanimate objects which had been introduced in evidence and frequently exhibited to the jury in the progress of the trial. The presence of the hammer and flatter in the jury room afforded the jurors an opportunity to make a closer inspection thereof than they had been able to make during the progress of the trial, and also enabled them to determine with greater accuracy whether the flatter had or had not been too highly tempered. As they could only be used for such a purpose, and were in a measure helpful to the jury in reaching a right conclusion, we can perceive no sufficient reason why they should have been excluded from the jury room, inasmuch as the object of all trials before a jury is to attain a right result as respects questions of fact."

Generally it is recognized as a matter largely in the discretion of the trial court; the danger being that the jury might get a wrong understanding of them, as of an indictment or other pleading, a deed, or of complex machinery. But we do not see how any harm could come from this photograph. It is not claimed that the photograph was not an exact representation of the plain-

tiff and of his condition after the accident. The jury could not be expected to forget the proof on that subject, and the only effect of the photograph was to prolong the impression of facts which were not disputed. The defendant cannot complain that because they were grievous they should not be recalled. The verdict is not so large as to excite apprehension that the jury were unduly moved to extravagance.

The refusal to give certain instructions to the jury as requested by the defendant is assigned as error. The two requests upon which counsel for plaintiff in error lay stress in their brief are: One, that the failure of the motorman to sound the gong on approaching the plaintiff did not contribute to the injury; the other is that the speed of the car was not a factor which had any effect in causing it. The assignment of error in refusing these requests is predicated upon the assumption that the plaintiff was too young to appreciate the danger or the meaning of a signal, and that the speed, whatever it was, was not so great but that the car could have been stopped before it reached the child. But we think neither of these requests should have been granted. The sounding of the gong on an approaching car might have awakened an instinct of danger in even so young a child, and induced it to make some effort to keep out of the way. And in respect of the speed of the car, the testimony would have amply justified the jury in finding that the plaintiff was seen or should have been seen on or near the track by the motorman in ample time for the latter to have checked his speed on approaching the plaintiff, and to have proceeded cautiously, so as to avoid injuring him, and that, instead of doing this, he recklessly kept on at a rapid gait, and inflicted the injury which resulted. That being so, the request was properly denied. It was not limited to the time when the plaintiff should have been first seen, but included the speed of the car until it struck the plaintiff.

The judgment will be affirmed, with costs.